## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **JARELL RIMAIHI**<br>**5005 Boydell Avenue**<br>**Oxon Hill, MD 20745,** | :<br>:<br>:    **Case No.:**<br>: |
| **CORNELIA FEENSTER**<br>**4316 Jay Street, N.E.**<br>**Washington, DC 20001,** | :<br>:    **Class and Collective Action Complaint**<br>:<br>: |
| **TIMOTHY SCOTT**<br>**8929 Rusland Court**<br>**Fort Washington, MD 20744,** | :    **Jury Trial Demanded**<br>:<br>:<br>: |
| **individually and on behalf of all persons**<br>**similarly situated** | :<br>:<br>: |
|          **Plaintiffs,**<br><br>   **v.** | :<br>:<br>:<br>: |
| **AVITECTURE, INC., d/b/a AVITECTURE,**<br>**1 Export Drive**<br>**Sterling, VA 20164;** | :<br>:<br>:<br>: |
| **RIGHTECH, INC., d/b/a RIGHTECH,**<br>**517 U.S. Hwy. 1 South, Suite 3069**<br>**Iselin, NJ 08830-3057** | :<br>:<br>:<br>: |
|        **Defendant.** | :<br>: |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Jarell Rimaihi ("Rimaihi"), Cornelia Feenster ("Feenster") and Timothy Scott

("Scott") (collectively, "Plaintiffs") individually and on behalf of all persons similarly situated,

bring this Complaint against Defendants Avitecture, Inc. ("Avitecture") and Rightech, Inc.

("Rightech") (collectively, "Defendants"), seeking all available relief under the D.C. Code, § 32-

1301 *et seq*. and the common law of contracts.  In addition to bringing this case in their

individual capacities, Plaintiffs bring this case as a class action and as a collective action under

D.C. Code § 32-1308(a)(1)(C)(iii)-(v) (utilizing the procedures of Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b)).  The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## INTRODUCTORY STATEMENT

Plaintiffs worked as lead technicians and technicians (collectively "Technicians") on federally funded construction projects in the District of Columbia Metropolitan area.  Plaintiffs were employed by Rightech (as staffing company for Avitecture) to perform tasks such as the installation of projectors, monitors and speakers on these public projects.  Pursuant to the Davis-Bacon Act, 40 U.S.C. § 3141 *et seq*. ("DBA"), and as pre-determined by the Secretary of Labor, this type of work must be paid at the applicable prevailing combined wage/benefit rate. In the District of Columbia, the prevailing applicable rate is that of Journeyman Electrical Installers, which is over $37 per hour.  In Virginia, the prevailing applicable rate is that of Journeyman Electricians, which is over $66 per hour.  However, Plaintiffs were only compensated at rates of pay ranging from approximately $19-22 per hour, without benefits.

Defendants are highly experienced in public works projects such as those at issue in this case, and their actions were not merely an unintentional oversight.  Although Rightech hired Plaintiffs as Technicians, they falsely lead Plaintiffs to believe that they would be performing work on a private-sector project at an L.A. Fitness center (i.e., not a prevailing rate job).  However, when Plaintiffs arrived for their first day of work at the L.A. Fitness, an Avitecture supervisor told Plaintiffs they would actually be working on a project at the Transportation Security Authority ("TSA") headquarters in Springfield, Virginia (a prevailing rate job).  Before Plaintiffs performed any work, the Avitecture supervisor personally drove Plaintiffs from the L.A. Fitness to the TSA Headquarters.  After a superior from the general contractor on the TSA

project informed Plaintiffs of their rights to receive DBA rates of pay, Plaintiffs raised this issue with Rightech, which willfully refused to properly classify and compensate them.

In this case, Plaintiffs base their claims on their agreements to work as Technicians, as well as the underlying public contracts, which incorporate prevailing wage requirements.  DBA wage provisions are included in federal construction contracts.  *See* 40 U.S.C. § 3142.  Any employee performing construction work on the project (be they an employee of a general contractor, a subcontractor or a staffing company) is an intended beneficiary of the public contract and must be paid the correct DBA wage and benefit rate according to the work performed (e.g., an employee performing the work of an electrician must be paid the prevailing rate for an electrician).

Avitecture performed electrical audio/visual installation work on numerous public projects.  Avitecture was party to contracts and/or subcontracts either directly with federal agencies, or through various other general contractors, subcontractors and/or property lessors. The contracts with the public agencies contained the same or similar DBA provisions.  Rightech, for its part, served as a staffing company to supplement Avitecture's electrical workforce, and directly employed Plaintiffs.

As intended beneficiaries, Plaintiffs thus have standing to sue under the common law for breach of these public contracts.  Plaintiff Rimaihi, who worked for Rightech in the District of Columbia, also has standing to sue under the D.C. Code for unpaid wages due under the public contract and pursuant to the DBA and other federal or District law. D.C. Code, §§ 32-1301(3), 1302, 1308.  Under the D.C. Code, all general contractors, subcontractors and staffing firms are jointly and severally liable for any underpaid wages.  D.C. Code, §§ 32-1331(5),(6).

For these reasons and those that follow, Plaintiffs request individual and class-based

relief as articulated herein.

## JURISDICTION AND VENUE

1.      Jurisdiction over Plaintiffs' claims is proper under 28 U.S.C. § 1332(a).   All Plaintiffs are of different state citizenship than all Defendants.   The amount in controversy exceeds $75,000, exclusive of interest and costs.

2.      Jurisdiction over Plaintiffs' claims is also proper under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA").  All Plaintiffs are of different state citizenship than all Defendants.   The amount in controversy with respect to all class members to this action exceeds $5,000,000, and there are in excess of 100 class members.

3.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.  The events giving rise to Plaintiffs' claims occurred within this District.

## PARTIES

4.      Plaintiff Jarell Rimaihi ("Rimaihi" or "Plaintiff Rimaihi") is an adult individual residing in Maryland.   Plaintiff Reimaihi was employed by Defendants as an electrical technician: (1) in Washington, D.C., during approximately 2018; and (2) in Springfield, VA, from approximately mid-February 2020 through late March 2020.  Pursuant to D.C. Code § 32-1308(a)(1)(C)(iii) and the procedures in 29 U.S.C. § 216(b), Plaintiff Rimaihi has consented in writing to being a party plaintiff in this action.  *See* Ex. A.

5.      Plaintiff Cornelia Feenster ("Feenster" or "Plaintiff Feenster") is an adult individual residing in the District of Columbia.  Plaintiff Feenster was employed by Defendants as a lead electrical technician in Springfield, VA from approximately mid-February 2020 through late March 2020.

6.      Plaintiff Timothy Scott ("Scott" or "Plaintiff Scott") is an adult individual

residing in Maryland.  Plaintiff Scott was employed by Defendants as an electrical technician in Springfield, VA from approximately mid-February 2020 through late March 2020.

7.     Defendant Avitecture, Inc. ("Avitecture"), is a Virginia corporation operating in the Washington, D.C. Metropolitan area, including in this District.  Avitecture maintains its corporate headquarters in Sterling, Virginia.

8.     Defendant Rightech, Inc. ("Rightech"), is a New Jersey corporation operating throughout the United States, including in this District.  Rightech maintains its corporate headquarters in Iselin, New Jersey.

9.     Avitecture is an electrical audio/visual contracting company which performs electrical construction and installation work for governmental entities and private parties. Avitecture describes its work as follows:

Low Risk, High Value AV Solutions to Ensure Success

Avitecture low-risk, high-value solutions integrate audio-video, teleconferencing, lighting solutions, structured cabling, and digital signage to benefit every client's AV systems with reliability, high performance, flexibility, and enhanced productivity. We provide value-added solutions that include design-build, integration, service, support, and LEED AP consultation.

Four decades of hands-on experience in thousands of successful projects for government, military, corporate, educational, institutional, museums and not-for-profit clients have given Avitecture extraordinary ability to tackle even the most demanding projects. Government clients value our ability to work in secure environments.

Avitecture understands the importance of communication in designing and integrating systems. We engineer and integrate systems to meet our clients' needs to ensure successful accessing and sharing information, interaction, decision-making, and managing interior environments. We apply our knowledge of advances in technology to our projects.

https://www.avitecture.com/what-we-do (last accessed 3/28/2020).

10.     A substantial part of Avitecture's business includes performing electrical

construction and installation work for governmental entities in which it is obligated to pay its construction employees, including Plaintiffs, a "prevailing wage" under various federal, state and/or local laws, including the Davis Bacon Act ("DBA"), 40 U.S.C. § 3141 *et seq.*, and state and local equivalents ("Public Work").

11.    In performing Public Work for governmental entities, Avitecture utilizes employees on its own payroll, as well as other employees provided through one or more staffing agencies such as Rightech.  Even when Avitecture supplements its workforce with staffing employees, the staffing employees still work under Avitecture's supervision.

12.    Rightech is a nationwide labor staffing agency, which according to its website:

… provides highly skilled AV/VTC talent nationwide to support the delivery of integrated audiovisual solutions across endpoints and devices.  With 20 years of industry experience, we can support your local and nationwide audiovisual projects through our extended workforce of 25,000 technical personnel…

https://www.rightech.net/ (last accessed 3/28/2020).

13.    Rightech provides client employers such as Avitecture with skilled electricians, including "Lead Technician," "Installation Technician," and "Onsite A/V Technician." *Id*.

14.    Avitecture employed Plaintiff Feenster (as a Lead Technician, a/k/a Lead Low Voltage Installer, a/k/a Lead Electrical Installer) and Plaintiffs Rimaihi and Scott (as Technician, a/k/a Installation Technician, a/k/a Low Voltage Installer, a/k/a Electrical Installer) through its staffing agency Rightech on Public Work projects.[1]

15.    Throughout this Complaint job titles "Lead Technician,"

16.    Avitecture continues to employ similarly-situated employees on Public Work projects, both directly and through staffing agencies such as Rightech.

---

[1] Throughout this Complaint, unless otherwise specified, the term "Technician" will collectively refer to job titles "Lead Technician," "Lead Low Voltage Installer," "Technician," "Installation Technician," "Low Voltage Installer," and "Electrical Installer."

## CLASS/COLLECTIVE DEFINITIONS

17.     Plaintiffs bring Count I of this lawsuit pursuant to Fed. R. Civ. P. 23 as a class action on behalf of themselves and the following class:

> All Lead Technicians, Technicians, Lead Low Voltage Installers, Low Voltage Installers, Lead Electrical Installers, Electrical Installers, Electricians and other similar employees employed by Avitecture, Inc. or any subcontractor or labor staffing provider therefor who performed work on a federally or District of Columbia funded construction project, in Virginia on any work day in the past five years and were not paid the full U.S. Department of Labor determined prevailing wage and benefit rate for a Journeyman Electrician for all hours worked ("**Virginia Class**").

18.     Plaintiffs also bring Count I of this lawsuit pursuant to Fed. R. Civ. P. 23 as a class action on behalf of themselves and the following subclass:

> All Lead Technicians, Technicians, Lead Low Voltage Installers, Low Voltage Installers, Lead Electrical Installers, Electrical Installers, Electricians and other similar employees employed by Rightech, Inc. (as a subcontractor or labor staffing provider for Avitecture, Inc.) who performed work on a federally or District of Columbia funded construction project, in Virginia on any work day in the past five years and were not paid the full U.S. Department of Labor determined prevailing wage and benefit rate for a Journeyman Electrician for all hours worked ("**Virginia Rightech Subclass**").

19.     Plaintiff Rimaihi brings Count II of this lawsuit as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the following class:

> All Lead Technicians, Technicians, Lead Low Voltage Installers, Low Voltage Installers, Lead Electrical Installers, Electrical Installers, Electricians and other similar employees employed by Avitecture, Inc. or any subcontractor or labor staffing provider therefor who performed work on a federally or District of Columbia funded construction project, in the District of Columbia on any work day in the past three years and were not paid the full U.S. Department of Labor determined prevailing wage and benefit rate for a Journeyman Electrical Installer for all hours worked ("**D.C. Class**").

20.     Plaintiff Rimaihi also brings Count II of this lawsuit pursuant to Fed. R. Civ. P. 23 as a class action on behalf of himself and the following subclass:

> All Lead Technicians, Technicians, Lead Low Voltage Installers, Low Voltage

Installers, Lead Electrical Installers, Electrical Installers, Electricians and other similar employees employed by Rightech, Inc. (as a subcontractor or labor staffing provider for Avitecture, Inc.) who performed work on a federally or District of Columbia funded construction project, in the District of Columbia on any work day in the past three years and were not paid the full U.S. Department of Labor determined prevailing wage and benefit rate for a Journeyman Electrical Installer for all hours worked ("**D.C. Rightech Subclass**").

21.     Plaintiff Rimaihi alternatively brings Count II of this lawsuit as a collective action pursuant to D.C. Code § 32-1308(a)(1)(C)(iii) and the procedures in 29 U.S.C. § 216(b), on behalf of himself and the following class of potential opt-in litigants:

All Lead Technicians, Technicians, Lead Low Voltage Installers, Low Voltage Installers, Lead Electrical Installers, Electrical Installers, Electricians and other similar employees employed by Avitecture, Inc. or any subcontractor or labor staffing provider therefor, who performed work on a federally or District of Columbia funded construction project, in the District of Columbia on any work day in the past three years and were not paid the full U.S. Department of Labor determined prevailing wage and benefit rate for a Journeyman Electrical Installer for all hours worked ("**D.C. Collective**").

22.     Plaintiff Rimaihi alternatively brings Count II of this lawsuit as a collective action pursuant to D.C. Code § 32-1308(a)(1)(C)(iii) and the procedures in 29 U.S.C. § 216(b), on behalf of himself and the following subclass of potential opt-in litigants:

All Lead Technicians, Technicians, Lead Low Voltage Installers, Low Voltage Installers, Lead Electrical Installers, Electrical Installers, Electricians and other similar employees employed by Rightech, Inc. (as a subcontractor or labor staffing provider for Avitecture, Inc.) who performed work on a federally or District of Columbia funded construction project, in the District of Columbia on any work day in the past three years and were not paid the full U.S. Department of Labor determined prevailing wage and benefit rate for a Journeyman Electrical Installer for all hours worked ("**D.C. Rightech Subcollective**").

23.     The Virginia Class, D.C. Class and D.C. Collective are together referred to as the "Classes."

24.     The Virginia Rightech Subclass, D.C. Rightech Subclass and D.C. Rightech Subcollective are together referred to as the "Subclasses."

25.     Plaintiffs reserve the right to redefine the Classes and Subclasses prior to class certification, and thereafter, as necessary.

## FACTS

26.     Defendants employ members of the Classes throughout Virginia and the District of Columbia.

27.     Since approximately February 2020, Plaintiffs have been employed as Technicians/Installation Technicians/Low Voltage Installers/Electrical Installers (Rimaihi and Scott) and Lead Technicians/Lead Low Voltage Installers/Lead Electrical Installers (Feenster) on a brand new construction project of the TSA headquarters in Springfield Virginia ("TSA Headquarters" or "TSA Headquarters Project").  At the TSA Headquarters Project, Plaintiffs were primarily engaged in the installation of projectors and monitors and related wiring tasks. On the TSA Headquarters Project, Plaintiffs were employed directly by Rightech, but also worked under the direction and control of Avitecture.

28.     At hire on or about February 2020, Plaintiffs and Rightech agreed that Plaintiffs would work as Technicians (Rimaihi and Scott) and Lead Technicians (Feenster).

29.     During approximately mid to late 2018, Plaintiff Rimaihi was employed as a Technician on a project involving the installation of speakers and other electrical equipment and related wiring tasks at the Federal Reserve Board building at 2001 Constitution Avenue, N.W., Washington, D.C. 20551 ("Federal Reserve" or "Federal Reserve Project"). On the Federal Reserve Project, Plaintiff Rimaihi was employed directly by Rightech, but also worked under the direction and control of Avitecture.

30.     At hire in or about 2018, Plaintiff Rimaihi and Rightech agreed that Plaintiff Rimaihi would work as a Technician.

**Public Contracts**

31.     As a major part of its business, Avitecture enters into contracts with federal, state and local agencies (either directly or through one or more general contractors, subcontractors and/or property lessors) to perform electrical construction work subject to the DBA and other prevailing wage laws.  These contracts contain prevailing wage provisions obligating all general contractors, subcontractors and staffing agencies to pay prevailing wages to employees performing public construction work.

<u>Federal Reserve, Washington, D.C., 2018</u>

32.     In the instance of the Federal Reserve, Avitecture entered into a contractual relationship with the Federal Reserve and/or the General Services Administration (either directly or through one or more general contractors or subcontractors) to perform electrical work, including but not limited to the installation of speakers and other electrical equipment, at the Federal Reserve building in the District of Columbia (the "Federal Reserve Contract").

33.     The value of the Federal Reserve Contract was well in excess of $2,000 and all construction work performed under the contract was subject to the provisions of the DBA and/or related laws.

34.     The Federal Reserve Contract contained language obligating all general contractors and subcontractors to pay employees the applicable rates under the DBA.  For example, any employees performing electrical work on the project (including installing speakers and other electrical equipment) would need to be compensated at the DBA wage and benefits rates for Journeyman Electrical Installer ("Electrical Installer"), which the U.S. Secretary of Labor has determined in "General Decisions" (otherwise known as "Wage Determinations") to be the rates of IBEW Local Union No. 26 ("IBEW Local 26") Electrical Installers.  These

contractual provisions are intended to benefit all employees performing construction work on the Federal Reserve Project, including Plaintiff Rimaihi in that these employees are to receive the DBA wage and benefit rates for all hours of electrical work they perform.

35.    Avitecture entered into an employee staffing contract with Rightech to supplement Avitecture's electrical workforce on the Federal Reserve Project.

36.    The installation of speakers, for example, is Electrical Installer's work and pursuant to the DBA and the Federal Reserve Contracts should have been paid at the following DBA rates, for Electrical Installers:

> As of September 5, 2016: Wages of $27.55 and Benefits of $10.20[2]
>
> As of September 3, 2018: Wages of $28.05 and Benefits of $10.91[3]

37.    From approximately April to June 2018, as an employee of Avitecture and Rightech, on the Federal Reserve Project, Plaintiff Rimaihi performed installation of speakers and other electrical equipment.

38.    Some of Avitecture's direct employees performed the installation of speakers and other electrical equipment on the Federal Reserve Project, while some of this work was performed by Rightech employees.  Avitecture supervised and assigned work and work schedules to its own direct electrical employees, as well as to electrical employees provided by Rightech, including Plaintiff Rimaihi.  The employees performed integrated tasks "side by side," and there was no distinction between the work performed by Avitecture's direct employees and indirect Rightech employees.

---

[2] *See* Ex. B, U.S. Department of Labor General Decision Number: DC180002 at pp. 2 ("ELEC0026-017 09/05/2016 … ELECTRICAL INSTALLER (Sound and Communication Systems)").
[3] *See* Ex. C, U.S. Department of Labor General Decision Number: DC190002 at pp. 3 ("ELEC0026-019 09/03/2018 … ELECTRICAL INSTALLER (Sound and Communication Systems)").

39.     Although the work of Plaintiff Rimaihi was Electrician's work, which should have been paid at the DBA wage and benefit rates for Electrical Installers, Plaintiff Rimaihi was paid only approximately $19.17 per hour worked.  Other Avitecture and Rightech employees performing similar tasks on the Federal Reserve Project were paid at rates far below the rates for Electrical Installers, even though these employees performed Electrical Installer's work.

<u>TSA Headquarters, Springfield, Virginia, February 2020</u>

40.     Based upon publicly available information, the General Services Administration ("GSA") awarded a 15-year lease to an affiliate of Boston Properties to build the new TSA Headquarters.[4]  The lease is valued at $316 million. *Id*.

41.     The TSA is to be the predominant tenant at TSA Headquarters, and thus applicable DBA rates must be paid for all employees performing construction work on the project.[5]  The delivery schedule of the lease is long enough to permit satisfying the space

---

[4] https://www.bizjournals.com/washington/news/2017/08/24/gsa-picks-a-new-headquarters-site-for-the-tsa.html?ana=RSS&s=article_search (last accessed 3/29/2020).

[5] *See, e.g.*, **GSA Leasing Desk Guide**.  Available at: https://www.gsa.gov/real-estate/real-estate-services/leasing-policy-procedures/policy-and-tools/policy/leasing-desk-guide-and-other-policy-information/leasing-desk-guide-pdf (last accessed 3/29/2020) **at Chapter 14, pp. 14-28** ("The Davis Bacon Act of 1931 (DBA) contains provisions requiring prevailing wages be paid to workers working on certain projects for the Government ... In summary, when a project includes new building construction, whether planned Lease Construction, Market Driven Construction, a Spec Building undergoing construction, or the complete rehabilitation or reconstruction of an existing building, and the Government will be the sole or predominant tenant of the facility such that any other use of the building will be functionally or quantitatively incidental to the Government's use and occupancy, then various FAR clauses implementing the Davis-Bacon Act of 1931 apply."); **Chapter 2, at pp. 2.3-6.** ("The Labor Standards paragraph provides that if an offeror proposes to satisfy the Government's requirements through new construction or the complete rehabilitation or reconstruction of an existing building, and the Government will be the sole or predominant tenant of the facility such that any other use of the building will be functionally or quantitatively incidental to the Government's use and occupancy, then various FAR clauses implementing the Davis-Bacon Act of 1931 apply. These include FAR 52.222-6, "Davis-Bacon Act," and 52.222-13, "Compliance with Davis-Bacon and Related Act Regulations." When the delivery schedule is long enough to permit satisfying the space requirements through construction of a building, Lease Contracting Officers must include the

requirements through construction of a building.

42.     Based upon publicly available information, the GSA-Boston Properties lease contract contained language obligating all general contractors and subcontractors to pay their employees who perform construction work on the TSA Headquarters Project at the correct DBA wage and benefit rates.   These contractual provisions are intended to benefit all employees performing construction work on the TSA Headquarters Project, including Plaintiffs in that these employees are to receive the DBA wage and benefit rates for Electricians for all hours of work performed.

43.     Based upon publicly available information, Boston Properties and/or its affiliated entities entered into a contract with general contractor and construction manager Lendlease, Inc.[6]

44.     Avitecture entered into a contractual relationship with Lendlease (either directly or through one or more general contractors or subcontractors) to perform electrical work, including but not limited to the installation of projectors and monitors, at the TSA Headquarters.

45.     Avitecture entered into an employee staffing contract with Rightech to supplement Avitecture's electrical workforce on the TSA Headquarters Project.

46.     The value of the TSA Headquarters Contract was well in excess of $2,000 and all construction work performed under the contract was subject to the provisions of the DBA and/or related laws.

47.     The installation of projectors and monitors is Electrician's work, and pursuant to the Wage Determination, should have been paid at the following DBA rates for IBEW Local 26

---

Labor Standards paragraph in the lease.").

[6] https://www.bisnow.com/washington-dc/news/office/boston-properties-lands-major-tsa-lease-in-springfield-78229 (last accessed 3/29/2020).

Inside Wiremen as of November 4, 2019: Wages of $46.85 and Benefits of $19.45[7]

48.     As employees of Rightech (and integrated into the workforce of Avitecture as Avitecture employees), on the TSA Headquarters project, Plaintiffs each performed installation of projectors, monitors and other electrical equipment.

49.     Although the work of Plaintiffs was Electrician's work, which should have been paid at the DBA wage and benefit rates for Electricians, Plaintiffs Rimaihi and Scott were paid only $19.17 per hour worked, and Plaintiff Feenster was paid only $22.00 per hour worked.

50.     Some of Avitecture's direct employees performed the installation of projectors, monitors and other electrical equipment on the TSA Headquarters Project, while some of this work was performed by Rightech's direct employees.  Regardless, Avitecture supervised and assigned work and work schedules to its own direct electrical employees, as well as to electrical employees provided by Rightech, including Plaintiffs.

51.     Based upon publicly available information, within approximately the last three years, Avitecture performed similar electrical construction work on other federally funded projects in the Washington, D.C. Metropolitan area (including the District, Maryland and Virginia), including but not limited to projects for the following governmental clients: U.S. Department of Justice, Freddie Mac, U.S. Naval Air Systems Command, and U.S. Department of Homeland Security.[8]  Each of these projects were similarly governed by public contracts including similar DBA language, obligating contractors, subcontractors and labor staffing

---

[7] *See* Ex. D, U.S. Department of Labor General Decision Number: VA20200178 02/07/2020 at pp. 2/7 ("ELECTRICIAN (Includes Low Voltage Wiring and Installation of Alarms and Sound and Communication Systems)").  Note that in contrast to the Wage Determinations applicable to the District of Columbia, Exs. B, C, the Wage Determination applicable to Fairfax County Virginia does not contain a lower-rate subclassification for Electrical Installer, and instead contains only one electrical classification: "Electrician."
[8] See https://www.avitecture.com/our-clients (last accessed 3/29/2020)

companies to pay all workers performing construction work at the applicable DBA wage and benefit rates for all hours of work performed. Defendants failed to pay the full DBA wage and benefit package for their employees on TSA Headquarters, Federal Reserve, and other public projects.

52.     To the extent Plaintiffs or other class members performed work on other publicly funded projects or performed work subject to other prevailing wage laws, Plaintiffs and the classes should have been paid the applicable prevailing wages and supplemental benefits (at any applicable overtime rates, where overtime was worked) for such work.

## Willful Nature of Violations

53.     In approximately February 2020, Rightech hired Plaintiffs as Technicians, but under the false pretense that they would be performing work on a private project at an L.A. Fitness center, i.e., a non-prevailing wage job.

54.     However, on their first day of work on or around February 17, 2020, Aviteture Lead Technician Ronald Hernandez drove Plaintiffs from the L.A. Fitness to the TSA Headquarters Project in Springfield, Virginia, which is a prevailing wage job. Plaintiffs then proceeded to work as Technicians on the TSA Headquarters Project, as described above, at the rates of about $19.00 to $22.00 per hour, without benefits.

55.     As stated above, Rightech was legally obligated under the applicable contracts and DBA or related law to pay Plaintiffs a combined wage/benefit rate of over $66 per hour for their Virginia work (Electrician's rate) and at a rate of over $37 per hour for their District of Columbia work (Electrical Installer's rate).

56.     After a superior from the general contractor on the TSA Headquarters Project informed Plaintiffs of their right to receive DBA rates of pay, Plaintiff Feenster raised this issue

with Rightech supervisor Thomas Urbanski.  However, to this day, Rightech has willfully refused to properly compensate Plaintiffs.

57.     Avitecture knew of Rightech's violations.  Indeed, shortly after Plaintiffs raised their complaints with Mr. Urbanski, upon information and belief, Avitecture terminated its staffing relationship with Rightech on the TSA Headquarters Project.  However, Avitecture took no action to ensure that Plaintiffs were paid their wages owed under the DBA and the TSA Headquarters Contract.

58.     Defendants are highly experienced in public work projects such as those at issue in this case and have access to experienced human resource and legal professionals.

59.     This is not the first time that Rightech has faced wage and hour lawsuits. Rightech has been sued by government enforcement agencies and in a private Fair Labor Standards Act collection action lawsuit. *See N.Y. Comm. of Labor v. Rightech, Inc*., No. 453941 (N.Y. Supr. Ct. Richmond Ct.); *Pa. Dept. of Lab. & Ind. v. Rightech, Inc*., No. 2015-CV-09015-NT (Pa. Comm. Pleas Ct.); *Mosely et al. v. Rightech, Inc.,* No. 5:18-cv-00144 (W.D. Tex).

60.     Rightech willfully disregarded the DBA, its public contracts and District of Columbia law in failing to properly compensate Plaintiffs.

61.     Avitecture recklessly disregarded its duties under the DBA, its public contracts and District of Columbia law in failing to properly compensate its own Technicians, as well as to ensure that Technicians employed directly by Rightech were properly compensated.

## COLLECTIVE ACTION ALLEGATIONS

62.     With respect to work performed on public projects within the District of Columbia, Plaintiff Rimaihi brings his claims under District of Columbia law pursuant to D.C. Code § 32-1308(a)(1)(C)(iii) and the procedures in 29 U.S.C. § 216(b) as a collective action on

behalf of the D.C. Collective and D.C. Rightech Subcollective defined above.

63.     Plaintiff Rimaihi desires to pursue his claims under the D.C. Code on behalf of any individuals who opt into this action pursuant to D.C. Code § 32-1308(a)(1)(C)(iii) and 29 U.S.C. § 216(b).

64.     Plaintiff Rimaihi, the D.C. Collective and the D.C. Rightech Subcollective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked as Technicians on federally funded construction projects pursuant to Defendants' previously described common pay practices and, as a result of such practices, were not paid the full and legally-mandated prevailing wage for Electrical Installers.  Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common classification, compensation, timekeeping and payroll practices.

65.     Specifically, Defendants typically paid Plaintiff Rimaihi, the D.C. Collective and the D.C. Rightech Subcollective at rates far below the applicable prevailing wages required by applicable public contracts, the DBA and related laws.

66.     The similarly-situated employees are known to Defendants, are readily identifiable, and may be located through Defendants' records and the records of any payroll companies that Defendants utilize.  Defendants employ many D.C. Collective and the D.C. Rightech Subcollective Members throughout the District of Columbia.  These similarly-situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages, and attorneys' fees and costs under the D.C. Code.

## CLASS ACTION ALLEGATIONS

67.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves, the Virginia Class and Virginia Rightech Subclass (for those who performed work within Virginia) and D.C. Class and D.C. Rightech Subclass (for those who performed work within the District of Columbia) as defined above.

68.     The members of the Virginia Class, Virginia Rightech Subclass, D.C. Class and D.C. Rightech Subclass are so numerous that joinder of all members is impracticable.  Upon information and belief, there are more than 40 members of each class.

69.     Plaintiffs will fairly and adequately represent and protect the interests of the classes because there is no conflict between the claims of Plaintiffs and those of the classes, and Plaintiffs' claims are typical of the claims of the classes.  Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

70.     There are questions of law and fact common to the proposed classes, which predominate over any questions affecting only individual class members, including, without limitation: whether Defendants have violated and continue to violate applicable public contracts and federal and District of Columbia law through its policy or practice of not paying its employees at applicable prevailing wages and supplemental benefits.

71.     Plaintiffs' claims are typical of the claims of the classes in the following ways, without limitation: (a) Plaintiffs are members of the Virginia Class and Virginia Rightech Subclass and Plaintiff Rimaihi is a member of the D.C. Class and D.C. Rightech Subclass; (b) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the classes; (c) Plaintiffs' claims are based on the same legal and remedial

theories as those of the classes and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiffs and the class members; and (e) the injuries suffered by Plaintiffs are similar to the injuries suffered by the class members.

72.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the classes predominate over any questions affecting only individual class members.

73.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  The classes are readily identifiable from Defendants' own employment records.  Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants.

74.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical.  Further, the amounts at stake for many of the class members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

75.     Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiffs and class members.  Plaintiffs envision no difficulty in the management of this action as a class action.

## <u>COUNT I</u>
## BREACH OF CONTRACT
### (Plaintiffs and the Virginia Class v. Avitecture)
### (Plaintiffs and the Virginia Rightech Subclass v. Defendants)

76.     All previous paragraphs are incorporated as though fully set forth herein.

77.     Plaintiffs were employees of Defendants and performed Electrician's work on the TSA Headquarters Project.  Similarly, members of the Virginia Class and the Virginia Rightech Subclass were also employees of Defendants, performing Electrician's work on various publicly funded projects throughout Virginia within the past three years.

78.     Pursuant to applicable public contracts and the incorporated prevailing wage and benefit provisions, Defendants were obligated to pay Plaintiffs and members of the Virginia Class and the Virginia Rightech Subclass the applicable prevailing wages and benefits for Electricians provided in the Wage Determinations for all hours of work performed.

79.     Plaintiffs and members of the Virginia Class and the Virginia Rightech Subclass, as employees and laborers/mechanics entitled to all wages and benefits in the preceding paragraph, are intended third-party beneficiaries under applicable public contracts.

80.     Defendants failed to pay Plaintiffs and members of the Virginia Class and the Virginia Rightech Subclass for all hours worked at the Electrician's rate, in violation of applicable public contracts.

81.     Plaintiffs and members of the Virginia Class and the Virginia Rightech Subclass were harmed by Defendants' breach of the applicable public contracts in that they were deprived of the applicable prevailing minimum wages required by the terms of the Public Contracts.

82.     Plaintiffs and members of the Virginia Class and the Virginia Rightech Subclass are all due unpaid prevailing wages and benefits at the Electrician rate and at an overtime rate over 40 hours worked in each work week, plus any additional damages (e.g., liquidated damages

or interest) provided in applicable public contracts and all consequential damages resulting from the breach.

**COUNT II**
**VIOLATION OF THE DISTRICT OF COLUMBIA CODE,**
**SUBCHAPTER I. PAYMENT AND COLLECTION OF WAGES**
**(Plaintiffs and the D.C. Class v. Avitecture)**
**(Plaintiffs and the D.C. Collective v. Avitecture)**
**(Plaintiffs and the D.C. Rightech Subclass v. Defendants)**
**(Plaintiffs and the D.C. Rightech Subcollective v. Defendants)**

83.     All previous paragraphs are incorporated as though fully set forth herein.

84.     The District of Columbia Code, Chapter 32, Subchapter I ("D.C. Wage Payment and Collection Law" or "DCWPCL") provides that an employer is obligated to pay all wages due to its employees.  *See* D.C. Code § 32-1301 *et seq*.

85.     At all relevant times as alleged herein, Plaintiffs were employed by Defendants within the meaning of the DCWPCL § 32-1301.

86.     Under the DCWPCL, "wages" is defined to include, *inter-alia*, "[o]ther remuneration promised or owed…[p]ursuant to a contract between an employer and another person or entity; or [p]ursuant to District or federal law."

87.     As Plaintiff Rimaihi, the D.C. Class, the D.C. Collective, the D.C. Rightech Subclass and the D.C. Rightech Subcollective were not paid the full prevailing wage and benefits owed to them under their agreed upon terms of employment, applicable public contracts, as well under the DBA and similar prevailing wage laws, the amount of underpaid wages and benefits constitutes "wages" within the meaning of the DCWPCL.

88.     Under DCWPCL § 32-1302, "[a]n employer shall pay all wages earned to his or her employees on regular paydays designated in advance by the employer and at least twice during each calendar month."

89.     As is common in the construction industry, where subcontracting exists, the DCWPCL provides that "[a] subcontractor, including any intermediate subcontractor, and the general contractor shall be jointly and severally liable to the subcontractor's employees for the subcontractor's violations of this chapter…" DCWPCL § 32-1303(5).

90.     As is also common in the construction industry, where staffing companies are utilized to supplement an employer's workforce, the DCWPCL provides that "[w]hen a temporary staffing firm employs an employee who performs work on behalf of or to the benefit of another employer pursuant to a temporary staffing arrangement or contract for services, both the temporary staffing firm and the employer shall be jointly and severally liable for violations of this chapter.." DCWPCL § 32-1303(6).

91.     Defendants have intentionally failed to pay the wages, including prevailing minimum wages and overtime wages, due for all work performed as set forth in the preceding paragraphs of this Complaint, in violation of DCWPCL § 32-1302.

92.     Defendants are not permitted by state or federal law, or by an order of a court of competent jurisdiction, to withhold or divert any portion of Plaintiff Rimaihi's, the D.C. Class', the D.C. Collective's, the D.C. Rightech Subclass' or the D.C. Rightech Subcollective's wages that concern this lawsuit.

93.     Defendants did not have written authorization from Plaintiff Rimaihi, the D.C. Class, the D.C. Collective, the D.C. Rightech Subclass and the D.C. Rightech Subcollective to withhold, divert or deduct any portion of their wages that concern this lawsuit.

94.     Pursuant to DCWPCL §§ 32-1303(5),(6) and 1308(a)(1)(A), employers such as Defendants, who fail to pay an employee wages in conformance with the DCWPCL shall be liable to the employee for the wages or expenses that were intentionally not paid, liquidated

damages of 300%, statutory penalties, court costs and attorney's fees incurred in recovering the unpaid wages.

95.     Due to Defendants' violation of the DCWPCL, Plaintiff Rimaihi, the D.C. Class, the D.C. Collective, the D.C. Rightech Subclass and the D.C. Rightech Subcollective are entitled to all unpaid prevailing minimum wages at the journeyman electrician rate and at an Overtime Rate over 40 hours worked in each work week, liquidated damages of 300%, statutory penalties, plus attorney's fees and costs.

96.     In violating the DCWPCL, Defendants acted willfully and with reckless disregard of clearly applicable DCWPCL provisions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly-situated, seek the following relief:

A.     An order permitting the District of Columbia claims in this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

B.     Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential D.C. Collective members and all potential D.C. Rightech Subcollective members;

C.     An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Virginia Class, Virginia Rightech Subclass, D.C. Class and D.C. Rightech Subclass;

D.     Back pay damages (including unpaid compensation for all hours worked, at the applicable prevailing rates of pay and overtime rates) and prejudgment interest to the fullest extent permitted under the law;

E.      Liquidated damages to the fullest extent permitted under the law;

F.      Consequential damages resulting from breaches of contracts;

G.      Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under

the law; and

H.      Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all issues of fact.

Dated:   April 7, 2020                          Respectfully Submitted,

James E. Goodley (Bar. No. PA00695)
Marc. L. Gelman*
Ryan P. McCarthy*
JENNINGS SIGMOND, P.C.
1835 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 351-0613/0623/0644
jgoodley@jslex.com
mgelman@jslex.com
rmccarthy@jslex.com

*Attorneys for Plaintiffs, the Classes and the
Subclasses*

*\* Pro Hac Vice Application to be Filed*