# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JARRELL RIMAIHI et al.,        )
                                       )
          Plaintiffs     )
                                       )
        v.                )  Case No. 1:20-cv-00930 (CKK)
                                       )
AVITECTURE, INC., et al.,     )
                                       )
         Defendants.   )
_____)

---

**PROPOSED BRIEF OF THE FOUNDATION FOR FAIR CONTRACTING MID-ATLANTIC REGION AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

---

Lucas R. Aubrey
Esmeralda Aguilar
Sherman Dunn, P.C.
900 7th Street, N.W., Suite 1000
Washington, D.C. 20001
Tel: (202) 785-9300

Counsel for *Amicus Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... ii

IDENTITY AND INTEREST OF THE *AMICUS* ........................................................1

SUMMARY OF THE ARGUMENT ...............................................................................2

ARGUMENT ....................................................................................................................3

    1.  The Defendant's Motion to Dismiss Must be Denied Because the "End Run" Theory on Which It Relies has Been Forcefully Discredited by an Overwhelming Number of Federal Courts.. ................................................3

    2.  *Johnson* is Unavailing Because it Relies on the Discredited "End Run" Theory and is Distinguishable Because it Precedes the D.C. Wage Theft Prevention Amendment Act of 2013 ...........................................................................11

    3.  For Many Construction Workers the DBA Administrative Remedy is Unavailable ..................................................................................................15

CONCLUSION ...............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Appalachian Reg'l Healthcare v. Coventry Health & Life Ins.*,
    Civ. No. 5:12-CV-114-KSF, 2014 U.S. Dist. LEXIS 8676 (E.D. Ky. Jan. 24, 2014)..........5, 9

*Brady v. Chase Home Fin.*,
    Civ. No. 1:11-CV-83820, 12 U.S. Dist. LEXIS 72218 (W.D. Mich. May 24, 2012) ..............9

*Chan v. City of New York*,
    1 F.3d 96 (2d Cir. 1993)........................................................................................5, 11

*Cox v. Mortgage Elec. Registration Sys., Inc.*,
    685 F.3d 663 (8th Cir. 2012) ...................................................................................9

*Cox v. NAP Construction Co.*,
    10 N.Y.3d 592 (N.Y. 2008) .....................................................................................9

*Garcia v. Skanska USA Building, Inc.,* 324 F. Supp. 3d 76 (D.D.C. 2018) ..................... 3, 4, 8-10

*Grochowski v. Phoenix Construction*,
    318 F.3d 80 (2nd Cir. 2003)............................................................................. passim

*Holloway v. United States*,
    526 U.S. 1 (1999)..................................................................................................14

*Ibrahim v. Mid-Atlantic Air*,
    802 F.Supp. 2d 73 (D.D.C. 2011) ..........................................................................13

*Isufi v. Prometal Constr.*,
    927 F. Supp. 2d 50 (E.D.N.Y 2013) ......................................................................10

*Johnson v. Prospect Waterproofing Co.,*
    813 F. Supp.2d 4 (D.D.C. 2011)...................................................................... passim

*Lia v. Wells Fargo Bank*,
    Civ. No. 2:14-0752, 2014 U.S. Dist. LEXIS 82053 (D.N.J. June 17, 2014)...........................5

*Mathis v. Nationstar Mortgage*,
    Civ. No. 12-0386-WS-N, 2012 U.S. Dist. LEXIS 175184 (S.D. Ala. Dec. 11, 2012)..........5, 9

*McDaniel v. Univ. of Chicago*,
    548 F.2d 689 (7th Cir. 1977) ..................................................................................5

*Mik v. Fed. Home Loan Mortgage Corp.*,
    743 F.3d 149 (6th Cir. 2014) ..................................................................................3

*Robinson v. Deutsche Bank*,
  Civ. No. 5:12-cv-590-F, 2013 U.S. Dist. LEXIS 50797 (E. D. N.C. April 9, 2013)............5, 9

*Spaulding v. Wells Fargo Bank*,
  714 F.3d 769, 776 (4th Cir. 2013) ..................................................................3, 4, 9

*Sutcliffe v. Wells Fargo Bank*,
  Civ. No. C-11-06595-JCS, 2012 U.S. Dist. LEXIS 65274 (N.D. Cal. May 9, 2012) ..............9

*Threadgill v. Armstrong World Indus.*,
  928 F.2d 1366 (3d Cir. 1991)...........................................................................11

*United States v. Alaska*,
  521 U.S. 1 (1997)............................................................................................14

*Univs. Research Ass'n v. Coutu*,
  450 U.S. 754 (1981).........................................................................................5

*Veteran's Canteen Service*,
  ARB Case No. 96-115 (Oct. 25, 1996)...............................................................18

*\*Wigod v. Wells Fargo Bank*,
  673 F.3d 547 (7th Cir. 2012) ........................................................... passim

STATUTES

Davis-Bacon Act

  40 U.S.C. § 3141 *et seq*............................................................................... passim

D.C. Minimum Wage Act

  D.C. Code § 32-1001 *et seq*.......................................................................11, 12

D.C. Wage Payment and Collection Law

  D.C. Code § 32-1301 *et seq*.....................................................................2, 11, 12

  D.C. Code § 32-1308 ...................................................................................13, 15, 18

D.C. Wage Theft Prevention Amendment Act of 2013

  D.C. Code § 32-1301(3)(E)(iii)  ...............................................................4, 11, 12, 14, 18

  D.C. Code § 32-1305(b)...........................................................................4, 12, 13, 14

Home Rule Act

  Pub. L. No. 93-198, 87 Stat. 774 (1973), D.C. Code § 1-1-206.02 .........................................14

Section 1983 of the Civil Rights Act

    42 U.S.C. § 1983 ................................................................................................11

**OTHER**

Annette Bernhardt et al., *Broken Laws, Unprotected Workers: Violations of Employment and Labor Laws in American Cities* (2009)...............................................................15, 16

D.C. Council, Comm. on Bus., Consumer, & Regulatory Affairs,
    *Report on B20-671* (Apr. 10, 2014) ..................................................................15, 16

Kim Bobo, Wage Theft in America (2011) ...................................................................16

Luis Ferré-Sadurní, *New York Officials Battle Wage Theft in Construction Industry*,
    N.Y. Times (Dec. 6, 2017).........................................................................................16

Maryam Jameel, *Flawed System Lets Contractors Cheat Workers on Federal Building Jobs*,
    NBC News (Aug. 21, 2017)........................................................................................16

*Reviewing the Rules and Regulations Implementing Federal Wage and Hour Standards*, Hearing
    Before the Subcomm. on Workforce Protections of the H. Comm. on Educ. and the
    Workforce, 114th Cong. 11-12 (2015). .........................................................17, 19

Ross Eisenbrey, *Blockbuster Report on Construction Industry Tax and Wage Cheating*,
    Economic Policy Institute (Sept. 8, 2014) .................................................................16

Talia Buford & Maryam Jameel, *Workers Cheated as Federal Contractors Prosper*,
    Center for Public Integrity (Apr. 6, 2016) ................................................................16

IDENTITY AND INTEREST OF THE *AMICUS*

The Foundation for Fair Contracting Mid-Atlantic Region ("FFC") moved this Court for leave to file an *amicus curiae* brief on August 26, 2020, pursuant to Local Civil Rule 7(o).  To avoid unduly delay in the proceedings, FFC offers this proposed *amicus* brief in conjunction with its motion.

The FFC is a non-profit, labor-management organization. Its purpose is to promote compliance with federal, state, and local prevailing wage requirements, particularly in the District of Columbia and Maryland. FFC works closely with several contractor associations – such as the Mechanical Contractors Association of Metropolitan Washington, the Mechanical Contractors Association of Maryland, the Sheet Metal & Air Conditioning Contractors National Association, the National Electrical Contractors Association, and others – and with several labor organizations, all of whom share an interest in encouraging compliance with prevailing wage laws.

FFC's compliance efforts benefit contractors in the construction industry by promoting fair competition and discouraging unscrupulous employers – employers that cut costs by cheating their employees out of wages owed – from underbidding and taking work away from those that comply with the law. Compliance with prevailing wage requirements also benefits employees in D.C. and Maryland by ensuring that they receive the wages that they are due under applicable law.

FFC monitors compliance with applicable prevailing wage laws by, among other things, using the Freedom of Information Act, 5 U.S.C. § 552, to obtain bid documents, contracts, and certified payroll reports from government contracting agencies to ensure that contractors and government contracting officers comply with their statutory and regulatory obligations. FFC also interviews employees who believe that they have not been paid the wages they are due under applicable prevailing wage laws and counsels those employees on how best to recover what they

are owed. There is no other public interest organization in the District of Columbia, Maryland, or Virginia dedicated to monitoring public construction projects for prevailing wage law violations and finding ways to remedy those violations.

The decision in this case could directly and significantly affect FFC's efforts to protect employers from unfair competition and employees from wage theft. Currently, D.C. law provides employees a supplemental remedy for recovering federal prevailing wages. In the absence of this remedy, the FFC's goal of ensuring compliance will be far more difficult to achieve because unscrupulous employers will be ever more emboldened to cheat their employees and underbid their law-abiding competitors.

## SUMMARY OF THE ARGUMENT

FFC's proposed brief addresses an issue of critical importance to the FFC, raised in this case by Defendant Avitecture, Inc.: whether employees who do not receive the wages to which they are entitled under the federal Davis-Bacon Act ("DBA"), 40 U.S.C. § 3141 *et seq*., can sue to collect those wages under the D.C. Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq*., as amended by the D.C. Wage Theft Prevention Amendment Act of 2013, B20-0199 (Oct. 1, 2013). Notably, Defendant does not argue federal preemption in the present case. Defendant bypasses black letter law on federal preemption and relies instead on the unelaborated theory that Plaintiffs' DCWPCL claims constitute an impermissible "end run" around the DBA and should therefore be dismissed.

That argument is flawed in several respects.  First and foremost, it relies on case law that has been largely rejected and discredited by the federal courts: *Johnson v. Prospect Waterproofing Co.*, 813 F. Supp.2d 4 (D.D.C. 2011), and the Second Circuit's decision in *Grochowski v. Phoenix Construction*, 318 F.3d 80 (2nd Cir. 2003).  After the issuance of *Grochowski,* numerous courts,

including the U.S. Courts of Appeals for the Seventh, Sixth and Fourth Circuits, and a federal district court in this Circuit, have unequivocally and forcefully rejected the proposition that the failure to include a private right of action in a federal statute, such as the DBA, precludes plaintiffs from invoking state or local law. *See, e.g.*, *Wigod v. Wells Fargo Bank*, 673 F.3d 547, 581-85 (7th Cir. 2012); *Mik v. Fed. Home Loan Mortg. Corp.*, 743 F.3d 149, 166 (6th Cir. 2014); *Spaulding v. Wells Fargo Bank,* N.A., 714 F.3d 769, 776 (4th Cir. 2013); *Garcia v. Skanska USA Building, Inc.*, 324 F. Supp. 3d 76, 82-83 (D.D.C. 2018).

Second, the decision in *Johnson* is inapplicable here not only because it relied on *Grochowski* and preceded its almost universal rejection, but also because it preceded the enactment of the D.C. Wage Theft Prevention Amendment Act of 2013. The judge in *Johnson* concluded that the plaintiffs were merely "dressing up their [DBA] claim in new language and asserting that it arises under state law." 813 F. Supp.2d at 9. The same cannot be said here, where Plaintiffs are relying on a D.C. law that – ***with Congressional approval*** – expressly confers on them a right of action to collect federal prevailing wages. Moreover, without the supplemental remedy set forth in the D.C. Wage Theft Prevention Amendment Act, irresponsible contractors will be ever more emboldened to compete unfairly for work by cheating their workers out of wages owed.

<u>ARGUMENT</u>

1. <u>The Defendant's Motion to Dismiss Must be Denied Because the "End Run" Theory on Which it Relies has Been Forcefully Discredited by an Overwhelming Number of Federal Courts.</u>

The DBA provides that contractors and subcontractors performing construction work on projects financed by the federal or D.C. government must pay their employees prevailing wages. 40 U.S.C. § 3142. Employees who do not receive prevailing wages can file an administrative complaint with the U.S. Department of Labor's Wage and Hour Division ("WHD") which can

investigate and withhold, from payments due to a prime contractor, amounts owed to employees working on that contractor's project. Where the funds withheld are insufficient to pay the amounts owed, the aggrieved employees may bring a civil action for unpaid wages. *Id*. § 3144(a).

The DCWPCL allows employees to sue their employers for wages owed. In 2013, the District of Columbia, with congressional approval, amended that law to permit employees to sue for wages owed "pursuant to District or federal law," including the DBA. D.C. Code §§ 32-1301(3)(E)(iii), 32-1305(b). The Defendants in this case – citing *Grochowski* – contend that employees cannot sue under the DCWPCL for wages owed under the DBA because permitting such lawsuits would constitute an "end run" around the DBA's administrative procedures.

 "[A] state-law claim's incorporation of federal law has never been regarded as disabling, whether the federal law has a private right of action or not." *Wigod*, 673 F.3d at 582; *Skanska,* 324 F. Supp. 3d 76 at 81 ("[T]hat the DBA lacks a private right of action of its own, it does not follow that Congress intended to shut down all other avenues of relief"). Nevertheless, Defendant insists that because the DBA does not provide for a private right of action prior to the exhaustion of administrative remedies, Plaintiffs should not be allowed to assert claims under D.C. law. (Def's Br. 1, 6.)[1]

The Defendant's "end run" theory has been rejected and discredited by an overwhelming number of federal courts. *See, e.g., Wigod*, 673 F.3d at 581-85 (agreeing with dissent in *Grochowski* that the "end run" theory is a "slogan, not an argument" and "an erroneous slogan at that"); *Mik*, 743 F.3d at 166 (adopting *Wigod's* finding that "a violation of federal law can support a state law claim, even when—or, perhaps, especially when—there is no private right of action

---

[1]      All citations to page numbers in the Defendant's brief correspond with the document page number assigned by the Electronic Case Filing System.

under a federal statute"); *Spaulding*, 714 F.3d at 776 (same); *Skanska*, 324 F. Supp. 3d at 82-83; *Lia v. Wells Fargo Bank*, Civ. No. 2:14-0752, 2014 U.S. Dist. LEXIS 82053, at *4-5 (D.N.J. June 17, 2014); *Appalachian Reg'l Healthcare v. Coventry Health & Life Ins.*, Civ. No. 5:12-CV-114-KSF, 2014 U.S. Dist. LEXIS 8676, at *5-7 (E.D. Ky. Jan. 24, 2014); *Robinson v. Deutsche Bank*, Civ. No. 5:12-cv-590-F, 2013 U.S. Dist. LEXIS 50797, at *34 (E. D. N.C. April 9, 2013); *Mathis v. Nationstar Mortgage*, Civ. No. 12-0386-WS-N, 2012 U.S. Dist. LEXIS 175184, at *13-15 (S.D. Ala. Dec. 11, 2012).

A divided panel of the Second Circuit in *Grochowski*, 318 F.3d at 86, introduced the end run theory on which Defendant relies.  There, a group of construction workers sued several contractors under state common law for breach of contract as third-party beneficiaries to recover prevailing wage rates secured by the Davis-Bacon Act. *Id*. at 83-84.[2] The defendant contractors in that case had entered into a construction contract with the city that required them to pay their laborers in accordance with the DBA.  *Id*. at 85. The workers sought to recover unpaid wages as third-party beneficiaries of that contract.  A divided panel of the Second Circuit dismissed plaintiffs' state law claims, reasoning that, at least in that circuit, "no private right of action exists under" the DBA and that "the plaintiffs' efforts to bring their claims as state common-law claims are clearly an impermissible 'end run' around the DBA." *Id*. at 86.[3]  The court further noted that

---

[2]    It is worth noting that the plaintiffs in *Grochowski* also sued for unpaid wages and unpaid overtime under the FLSA, and the Second Circuit allowed those claims to proceed. 318 F.3d at 84, 88.

[3]    Not all circuits agree that the DBA confers no private right of action.  *Compare Chan v. City of New York*, 1 F.3d 96, 103 (2d Cir. 1993) (holding that DBA confers no private right of action), with *McDaniel v. Univ. of Chicago*, 548 F.2d 689, 695 (7th Cir. 1977) (finding private right of action in the DBA). The Supreme Court has recognized the conflicting authority without ruling on this issue.  *Univs. Research Ass'n v. Coutu*, 450 U.S. 754, 769 (1981).  The D.C. Circuit has not passed on this issue.

permitting the workers to proceed with third-party claims against the contractors would interfere with the remedial scheme under the Davis-Bacon Act. *Id*.

In a well-reasoned opinion, the Seventh Circuit in *Wigod*, 673 F.3d at 581-85, discussed at length why *Grochowski's* end run theory lacks merit. The plaintiff in *Wigod* brought several state law claims against her home mortgage servicer for refusing to modify her loan pursuant to the federal Home Affordable Mortgage Program ("HAMP"). The plaintiff's complaint asserted contract and tort claims under state common law and claims under the state's consumer fraud statute. *Id*. at 555.

Like the Defendant in the instant case, the defendant in *Wigod* argued that plaintiff's state law claims were, in fact, federal "claims in disguise" and an "impermissible end-run around the lack of private action in" federal law. *Id*. at 581. The district court in *Wigod* applied the *Grochowski* end run theory and dismissed the complaint, reasoning that the plaintiff's claims were based on obligations under HAMP and its enabling statute, which did not provide a private right of action. *Id*. at 555.

On appeal, a unanimous panel of the Seventh Circuit unequivocally and forcefully rejected the end run theory and its "novel presumption that where Congress provides no remedy under federal law, state law may not afford one in its stead." *Id* at 581. The Seventh Circuit explained that the end run theory – "the primary basis on which the district court dismissed [plaintiff's] complaint" – is flawed because it "conflate[s] two distinct lines of cases - one involving the existence of [an implied] federal private right of action, and the other about federal preemption of state law." *Id*. (internal citations omitted). The Court clarified that:

> If this case involved whether to recognize a federal right of action under HAMP, [the case law on implied private right of action] would certainly weigh in favor of judicial caution. *The issue here, however, is not whether federal law itself provides private remedies, but whether it displaces remedies otherwise available under state law.*

6

*Id*. (emphasis added).  The mere fact that a state law refers to or incorporates part of a federal statute provides no basis for dismissal of the state law claims.  *Id*.  To demonstrate "the novelty of [the defendant's] argument," the Seventh Circuit pointed to the many cases in which the Supreme Court has confronted issues of subject matter jurisdiction presented by state common law claims that incorporated federal laws "without so much as a peep about whether state law may do so without being preempted."  *Id*. at 581-82 (collecting cases).  The court observed that, although these cases considered "whether the presence of a federal issue in a state-created cause of action gives rise to federal question jurisdiction under 28 U.S.C. § 1331," none of the cases "even suggested that the absence of a private right of action under a federal statute would prevent state law from providing a cause of action based in whole or in part on violations of the federal law." *Id*. at 582.  It concluded that "a state-law claim's incorporation of federal law has never been regarded as disabling, whether the federal law has a private right of action or not."  *Id*.

   With regard to *Grochowski,* 318 F.3d 80, the Seventh Circuit explained that, like the district court in *Wigod*, the Second Circuit in *Grochowski* had incorrectly identified the issue and erroneously focused on a private-right-of-action analysis, *Wigod*, 673 F.3d at 583-84.  The Seventh Circuit noted that the Second Circuit's "only elaboration" of this novel end run theory appeared in the following two-sentence paragraph:

> At bottom, the plaintiffs' state-law claims are indirect attempts at privately enforcing the prevailing wage schedules contained in the DBA. To allow a third-party private contract action aimed at enforcing those wage schedules would be inconsistent with the underlying purpose of the legislative scheme and would interfere with the implementation of that scheme to the same extent as would a cause of action directly under the statute.

*Wigod,* 673 F.3d at 583 (quoting *Grochowski*, 318 F.3d at 86)(internal citations omitted).  The *Wigod* court rejected this underdeveloped theory, and adopted Judge Lynch's forceful dissent,

characterizing the theory as "a slogan, not an argument." *Id.* at 583-84 (quoting *Grochowski*, 318 F.3d at 90-91). The Seventh Circuit further noted that the end run theory "bears a striking resemblance" to the conflict preemption doctrine. *Id.* at 584. Yet, "there is no evidence that Congressional intent -- the touchstone of any preemption inquiry -- was to preempt state law with the DBA." *Id.* Thus, the court observed, "the *Grochowski* end-run theory is really just an 'end-run' around well-established preemption doctrine, and we decline to adopt it." *Id.*; *see also id.* at 584 n. 18 ("[T]he end-run theory lies in a doctrinal no-man's land, and its adoption would upset a century or two of preemption [precedent]").

The Seventh Circuit recently reaffirmed its holding in *Wigod*. In *Bible v. U.S. Student Aid Funds*, 799 F.3d 633 (7th Cir. 2015), the plaintiff brought a state law breach of contract claim against her student loan guarantor, alleging that the guarantor's imposition of collection costs violated the federal law requirements incorporated in her loan agreement.

The defendant in *Bible* advanced a formal preemption argument, as well as *Grochowski's* end run theory. The Seventh Circuit rejected the defendant's conflict preemption argument, emphasizing that the loan agreement "simply incorporates applicable federal regulations as the standard for compliance," and that the plaintiff's state law claims are "precisely congruent with the federal requirements." *Id.* at 639 & 653. As to defendant's end run argument, the court reaffirmed *Wigod*: "The absence of a private right of action under federal law provides no reason to dismiss a state law claim just because the claim refers to or incorporates some element of the federal law." *Id.* at 654. The court also emphasized that the end run theory must be rejected even where the federal law in question provides an administrative enforcement scheme. *Id.*

The Sixth and Fourth Circuits, as well as several federal district courts – including one in this Circuit – have agreed that the end run theory lacks merit. *See, e.g., Mik*, 743 F.3d at 166;

*Spaulding*, 714 F.3d at 776; *Skanska*, 324 F. Supp. 3d at 82-83; *Smith v. Bank of Am.*, Civ. No. 14-6668, 2018 BL 522959, at *3 (C.D. Cal. July 2, 2018) (the end run theory "is an attempt at preemption without having to actually follow established preemption doctrines."); *Lia*, Civ. No. 2:14-0752, 2014 U.S. Dist. LEXIS 82053, at *4-5; *Appalachian Reg'l Healthcare*, Civ. No. 5:12-CV-114-KSF, 2014 U.S. Dist. LEXIS 8676, at *5-7; *Robinson,* Civ. No. 5:12-cv-590-F, 2013 U.S. Dist. LEXIS 50797, at *34; *Mathis*, Civ. No. 12-0386-WSN, 2012 U.S. Dist. LEXIS 175184, at *13-15; *Brady v. Chase Home Fin.*, Civ. No. 1:11-CV-83820, 12 U.S. Dist. LEXIS 72218, at *9-11 (W.D. Mich. May 24, 2012); *Sutcliffe v. Wells Fargo Bank*, Civ. No. C-11-06595, 2012 U.S. Dist. LEXIS 65274, at *60-64 (N.D. Cal. May 9, 2012); *see also Cox v. Mortgage Elec. Registration Sys., Inc*., 685 F.3d 663, 675 n.4 (8th Cir. 2012)(suggesting trial court's conclusion that plaintiffs' state law claims had to be dismissed because they implicated a federal law with no private right of action, was "questionable" but resolving the appeal on other grounds).[4]

In *Skanska*, District Court Judge Dabney Friedrich of this Circuit rejected a defendant contractor's end run theory in a case similar to the one at bar. 324 F. Supp. 3d at 82-83 n. 6.  There, a group of carpenters alleged that their employers had paid them less than the prevailing wage for carpentry work performed on DBA-covered projects.  Like Plaintiffs in the instant case, the workers in *Skanska* sued under the DCWPCL to recover the difference between the wages actually paid to plaintiffs and the prevailing wage.  The court concluded that the DBA did not foreclose

---

[4]     Also, in *Ali v. DLG Development*, 283 F. Supp. 3d 347 (E.D. Pa. 2017), the U.S. District Court for the Eastern District of Pennsylvania held that it did not have federal question jurisdiction over state law claims seeking to recover unpaid Davis-Bacon wages.  On remand before the Philadelphia Court of Common Pleas, Civ. No. 003712, the defendants advanced the end run theory in support of their motion to dismiss. In an apparent rejection of the end run argument, the Court of Common Pleas proceeded to issue a judgment on the merits under Pennsylvania's wage and hour laws.  *Ali v. Dale Corp*, Civ. No. 003712 (Philadelphia Court of Common Pleas Apr. 30, 2018).

any cause of action under DCWPCL because the DBA "is not so expansive." *Id*. at 77.  In rejecting the end run theory, the court explained that there is a difference between the lack of a private right of action in a federal statute and a congressional intent to shut down all other avenues of relief. *Id*. at 81.  Moreover, like the defendant in *Skanska*, Defendant Avitecture does not dispute the nature of the work performed by Plaintiffs – i.e., electrical installation work (Def's Br. at 3).   Nor is there any such dispute pending before the U.S. Department of Labor. *Skanska*, 324 F. Supp. 3d at 84 (suggesting that courts should defer to U.S. DOL where a classification dispute is pending before the agency at the time of litigation). This is likely so because a review of the wage determination applicable to DBA-covered work in D.C. shows that – aside from the Electrical Installer job classification – there is no other classification that performs low-voltage electrical installation work. (Compl. Ex. B at 3.)

It is also important to note that even the Court of Appeals of New York, in a case seeking DBA wages, refused to follow *Grochowski* because its "reasoning is flawed." *Cox v. NAP Constr. Co.*, 10 N.Y.3d 592, 604 (N.Y. 2008).  And, at least one district court in the Second Circuit has questioned the soundness of *Grochowski's* end run theory and suggested that the Second Circuit may want to revisit its decision. *Isufi v. Prometal Constr.*, 927 F. Supp. 2d 50, 52 (JBW) (E.D.N.Y. 2013) ("Even though Judge Lynch's dissent in *Grochowski* appears to be correct," the court is "forced to follow the majority opinion").[5] Another district court in the Second Circuit appears to have restricted *Grochowski's* end run theory to breach of contract cases. *In re Ford Fusion & C-*

---

[5]    Interestingly, in *Picini v. Chase Home Fin. LLC*, 854 F. Supp. 2d 266, 273 (JS) (E.D.N.Y. 2012), another judge in the Eastern District of New York, rejected defendants' end run argument as unpersuasive and permitted the plaintiffs' state law claims to proceed. While the defendants in that case did not cite to *Grochowski* in support of their end run theory, they did cite the district court decision in *Wigod*, which at the time had not yet been reversed by the Seventh Circuit.

*Max Fuel Econ. Litig.*, Civ. No. 13-MD-2450, 2015 U.S. Dist. LEXIS 155383, at *61 (S.D.N.Y. Nov. 12, 2015).

The HAMP's enabling statute discussed in *Wigod* and the Davis-Bacon Act in the instant case are analytically indistinguishable. Both are federal laws administered by a department or agency of the executive branch, and federal courts have determined that neither provides a private cause of action for the individuals benefitted by those statutes. Thus, *Wigod* and its progeny are directly on point here, and for the reasons articulated by the Seventh Circuit, and the numerous courts that have agreed with the Seventh Circuit, this Court should reject Defendant's contention that Plaintiffs' claims are barred because they constitute an "end run around" the DBA.[6]

2. *Johnson* is Unavailing Because it Relies on the Discredited "End Run" Theory and is Distinguishable Because it Precedes the D.C. Wage Theft Prevention Amendment Act of 2013.

The Defendant's motion to dismiss, in large part, relies on *Johnson v. Prospect Waterproofing Company*, 813 F.Supp.2d 4 (D.D.C. 2011) (ABJ) – a decision that accepted *Grochowski's* slapdash end run theory. A single district court decision, however, is not binding on other district judges in the same district. *Threadgill v. Armstrong World Indus.*, 928 F.2d 1366, 1371 & n.7 (3d Cir. 1991) (collecting cases). Moreover, the *Johnson* decision predates *Wigod* and its growing progeny, and *Johnson* is distinguishable because that case precedes the enactment of

---

[6]     It is worth noting that while the Second Circuit has held the DBA does not confer a private right of action, it has *also* held that workers are entitled to sue for DBA violations under 42 U.S.C. § 1983, the federal law that provides a cause of action for the deprivation of federal rights. *Chan*, 1 F.3d at 103. To arrive at the latter holding, the Second Circuit in *Chan* had to reject the argument that the alleged comprehensiveness of the DBA administrative remedy scheme evinced a congressional intent to foreclose reliance on § 1983 to enforce the DBA. *Id.* at 104-06. It is baffling how, in the Second Circuit's view, the same remedial scheme that is not sufficiently comprehensive to demonstrate a congressional intent to preclude § 1983 relief is sufficiently comprehensive to block state law relief. *See Grochowski*, 318 F.3d at 90 (Lynch, J., dissenting).

the D.C. Wage Theft Prevention Amendment Act of 2013 – the law that expressly authorizes workers, such as Plaintiffs, to recover wages "promised or owed" "[p]ursuant to…federal law" such as the Davis-Bacon Act.   D.C. Code § 32-1301(3)(E)(iii); *see also id.* § 32-1305(b) ("remuneration promised by an employer to an employee shall be presumed to be at least the amount required by federal law, including federal law requiring the payment of prevailing wages…").

In *Johnson*, a group of construction workers sued a contractor for unpaid wages based on D.C. statutory and common law claims.  813 F.Supp.2d at 5. The plaintiffs in that case had worked for the contractor on various federally-funded construction projects subject to the Davis-Bacon Act, and they sought to recover the difference between the wages they were actually paid and the prevailing wages owed in accordance with the DBA. *Id.* The plaintiffs asserted a common law *quantum meruit* claim and claims under the D.C. Wage Payment and Collection Law, D.C. Code § 32-1301 *et seq.*, and the D.C. Minimum Wage Act, D.C. Code § 32-1001 *et seq.*

Like the district court in *Wigod*, the district court in *Johnson* glossed over the complex preemption issues before it, opting instead for *Grochowski's* end run theory.  The *Johnson* court declined to pass on whether the DBA conferred a private right of action on workers prior to exhaustion of administrative remedies, but assumed it did not because the parties conceded as much. 813 F.Supp.2d at 7-9.  Based on this assumption – and without any independent analysis – the court accepted *Grochowski's* now-discredited theory that plaintiffs may not "get around" the DBA "by dressing up their claim[s]" with state law.  *Id.* at 9-10 (citing *Grochowski*, 318 F.3d at 86).

This Court should reject *Johnson* because, as the Seventh Circuit and an overwhelming number of federal courts have held, the end run theory lacks merit.  The theory "lies in a doctrinal

no-man's land."   *Wigod*, 673 F.3d at 584 n. 18.  It conflates preemption doctrines and federal

private right of action principles, ignoring decades of judicial precedents.  *Id*. at 581.[7]

Moreover, *Johnson* is distinguishable because it predates the D.C. Wage Theft Prevention

Amendment Act of 2013, which expressly confers a private right of action on workers to recover

federal prevailing wages.  D.C. Code §§ 32-1301(3)(E)(iii), 32-1305(b), 32-1308.  This fact is

important because in dismissing the plaintiffs' D.C. wage and hour law claims, the *Johnson* court

emphasized that while the:

> D.C. Minimum Wage Act specifically authorizes an employee to bring a civil action
> for unpaid wages, the statute confers that right only for actions for wages "to which
> that employee is entitled under *this subchapter*," not under an unrelated federal law.
> D.C. Code § 32-1012(a) (emphasis added).

*Johnson*, 813 F.Supp.2d at 9 n. 6.  Less than two years after *Johnson* was decided, the D.C. Council

passed – and Congress approved – the Wage Theft Prevention Amendment Act, which amended

the Wage Collection Law, D.C. Code § 32-1301 *et seq*., by among other things, conferring a private

right of action on workers to recover federal prevailing wages.  Specifically, the Wage Theft

Prevention Amendment Act expanded the definition of recoverable "wages" to include

"remuneration promised or owed" "[p]ursuant to District or federal law" such as the Davis-Bacon

Act.  D.C. Code § 32-1301(3)(E)(iii).

The Wage Theft Prevention Amendment Act further states that "[i]n enforcing the

provisions of [the Wage Collection Law], the remuneration promised by an employer to an

employee shall be presumed to be at least the amount required by federal law, including *federal*

---

[7]     The Defendant also cites *Ibrahim v. Mid-Atlantic Air*, 802 F.Supp. 2d 73 (D.D.C.
2011)(ESH), in support of their end run argument. (Def.'s Br. 7.) Like *Johnson*, however, that case
predates *Wigod*.  Moreover, the *Ibrahim* court granted the defendant's motion to dismiss because
the pro se plaintiff failed to allege sufficient facts for his breach of contract claim and "he
provide[d] no explanation or justification under D.C. law for his claims." 802 F.Supp. at 76.

*law requiring the payment of prevailing wages*, or by District law." D.C. Code § 32-1305(b)(emphasis added).[8]

Moreover, the legislative history confirms that the bill's sponsors adopted the new language for the specific purpose of permitting workers to recover prevailing wages secured by federal law. *See* Budget Hearing Before the D.C. Council's Comm. on Workforce & Community Affairs (May 1, 2013) (statement of then-Chair Marion Barry recognizing that amendment is aimed at enforcing federal prevailing wage rates). It is reasonable to presume that the D.C. Council was familiar with the *Johnson* case when it enacted the Wage Theft Prevention Amendment Act. *See Holloway v. United States*, 526 U.S. 1, 9 (1999) ("lt is reasonable to presume that Congress was familiar with the cases and the scholarly writing [on the conditional nature of specific intent].")； *U.S. v. Alaska*, 521 U.S. 1, 35 (1997) (asserting that Congress passed statute "against the background of our [previous relevant] cases"). The D.C. Council approved the amendments in July 2013, and transmitted the bill to Congress for mandatory review. *See* Home Rule Act, Pub. L. No. 93-198, 87 Stat. 774 (1973), D.C. Code § 1-1-206.02. Congress approved the Wage Theft Prevention Amendment Act without objection, and the law took effect on December 24, 2013.[9]

---

[8]     Like the DBA, D.C. law also holds general contractors, such as Defendant Avitecture, jointly and severally liable for the prevailing wage violations of their subcontractors. D.C. Code § 32-1303(5); 29 C.F.R. §5.5(a)(6).

[9]     Moreover, since the 2013 passage of the Wage Theft Prevention Amendment Act, Congress has extended the DBA's requirements on numerous occasions without any attempt to override or disrupt the prevailing wage enforcement provisions enacted by the D.C. Council. *See, e.g.,* Pub. L. 114–322, title IV, § 5006(b), Dec. 16, 2016 (extending DBA to federally-assisted dam rehabilitation projects); Pub. L. 114–94, div. A, title I, §§ 1105(a), 1109(b), Dec. 4, 2015 (extending DBA to federally-assisted freight and surface transportation projects); Pub. L. 113–121, title V, § 5030, June 10, 2014 (extending DBA to federally-assisted wastewater projects). By not disturbing the enforcement provisions of the Wage Theft Prevention Amendment Act in subsequent DBA legislation, Congress has signaled its approval of the D.C. Council's actions with respect to prevailing wage enforcement in the District of Columbia. *See U.S. v. Pub. Serv. Co. of Colo.*, 143 F.2d 79, 81 (10th Cir.1944) (citing *Brewster v. Gage*, 280 U.S. 327, 337 (1930)); *Burnet*

Thus, unlike the plaintiffs in *Johnson*, the Plaintiffs here assert claims under a Congressionally-approved D.C. law that expressly confers on them a private right of action for the recovery of federal prevailing wages.  D.C. Code §§ 32-1301(3)(E)(iii), 32-1305(b), 32-1308. They are invoking a D.C. law in the manner specifically envisioned by the D.C. Council and by the Congress of the United States.

3.   For Many Construction Workers the DBA Administrative Remedy is Unavailable.

Defendant argues that construction workers should not be permitted to sue under the DCWPCL for unpaid DBA wages because permitting them to do so would undermine the administrative enforcement procedure of the U.S. Department of Labor.  That argument ignores a fact that anyone familiar with the construction industry understands all too well:  For many construction workers cheated out of their DBA wages, the administrative remedy to which Defendant would consign workers is unavailable.

It is well-established that wage theft among low-wage workers, including workers in the construction industry, is common.  A frequently-cited 2009 study surveyed 4,387 low-wage workers in New York, Chicago, and Los Angeles and found that more than two-thirds had experienced some form of wage theft during the previous work week.  Annette Bernhardt et al., *Broken Laws, Unprotected Workers: Violations of Employment and Labor Laws in American Cities* 27 (2009), www.nelp.org/wp-content/uploads/2015/03/BrokenLawsReport2009.pdf.  The D.C. Council's committee report on the Wage Theft Prevention Amendment Act of 2014, B20-671, cited a different study, which found that "60% of low wage workers suffer wage violations each week."  D.C. Council, Comm. on Bus., Consumer, & Regulatory Affairs, *Report on B20-671*

---

*v. Thompson Oil & Gas Co.*, 283 U.S. 301, 307-08 (1931); *Nat'l Lead Co. v. United States*, 252 U.S. 140, 146 (1920).

(Apr. 10, 2014) ("Comm. Rept."). That same report noted that wage theft was "especially prevalent in construction" and in a handful of other industries. *Id.* at 2.

One recognized form of wage theft is the failure to pay employees prevailing wages due under the DBA or other similar laws. As one well-known author observed, "Unethical employers will steal wages from workers by not paying the prevailing wage rate, even though their contracts were bid *and the employers were paid* based on the prevailing wage rates stipulated in the bid documents." Kim Bobo, *Wage Theft in America* 29-30 (2011) (emphasis in original). The committee report on the Wage Theft Amendment Act of 2014 describes the testimony of construction workers and employees of federal contractors who were cheated out of wages by their employers. Comm. Rept. at 6-7. Numerous recent news reports recount similar stories.[10]

Construction workers who do not receive the prevailing wages they are owed are frequently reluctant to complain while they are still employed, and those that do complain all too frequently face retaliation from their employers. The 2009 study of low wage workers found that many employees do not complain because they are afraid of losing their jobs or having their wages or hours cut. Bernhardt et al., *supra*, at 14.

The understandable reluctance of employees to complain about a contractor's failure to pay prevailing wages while they are still employed by that contractor explains in part the ineffectiveness and unavailability of the DBA administrative remedy. Under the DBA, employees

---

[10]    *See, e.g.*, Luis Ferré-Sadurní, *New York Officials Battle Wage Theft in Construction Industry*, N.Y. Times (Dec. 6, 2017), www.nytimes.com/2017/12/06/nyregion/new-york-construction-wage-theft.html; Maryam Jameel, *Flawed System Lets Contractors Cheat Workers on Federal Building Jobs*, NBC News (Aug. 21, 2017), www.nbcnews.com/news/us-news/flawed-system-lets-contractors-cheat-workers-federal-building-jobs-n793736; Talia Buford & Maryam Jameel, *Workers Cheated as Federal Contractors Prosper*, Center for Public Integrity (Apr. 6, 2016), www.publicintegrity.org/2017/04/06/20803/workers-cheated-federal-contractors-prosper; Ross Eisenbrey, *Blockbuster Report on Construction Industry Tax and Wage Cheating*, Economic Policy Institute (Sept. 8, 2014), www.epi.org/blog/blockbuster-report-construction-industry/.

who do not receive prevailing wages can complain to WHD.  If, after conducting an investigation, WHD concludes that employees have been underpaid, it can withhold from the payments due that project's prime contractor amounts sufficient to pay employees what they are owed.  *See* 40 U.S.C. § 3144(a)(1).

That procedure is hampered by the fact that WHD is notoriously underfunded and understaffed.  In his 2015 testimony before the Subcommittee on Workforce Protections of the House Education and the Workforce Committee, former Acting U.S. Secretary of Labor Seth Harris explained that WHD was responsible for protecting 135 million workers in 7.3 workplaces throughout the United States and that WHD did not have nearly enough investigators to perform that monumental task.  *Reviewing the Rules and Regulations Implementing Federal Wage and Hour Standards*, *Hearing Before the Subcomm. on Workforce Protections of the H. Comm. on Educ. and the Workforce*, 114th Cong. 11-12 (2015), available at https://edworkforce.house.gov/uploadedfiles/testimony_harris.pdf.

But, the problem goes beyond a lack of resources.  A 2016 letter from Wage and Hour Administrator David Weil explained that "WHD simply does not have the resources to conduct an investigation into every complaint alleging [DBA] violations."  Letter from David Weil, Wage and Hour Adm'r, Dep't of Labor, to Sean McGarvey, President, NABTU (July 28, 2016) (attached).  As a result, WHD will often times decline to investigate alleged DBA violations if the contract work has been completed or is nearing completion, because, as Weil explained, "the recovery of back wages generally cannot be achieved through withholding funds otherwise due the prime

contractor on the contract on which the violation occurred." *Id.* So, in many instances WHD will not even investigate a complaint if it is lodged after or near the end of a contract's performance.[11]

Thus, it should come as no surprise that out of the total back pay collected last year by WHD, a mere 3 percent was recovered from DBA violations. *See* WHD Fiscal Year Data, https://www.dol.gov/whd/data/datatables.htm#panel1 (go to "Government Contracts"); News Release, U.S. DOL Recovers $322 Million in Wages for Workers in FY 2019, (Oct. 28, 2019), https://www.dol.gov/newsroom/releases/whd/whd20191028.

Consider the quandary that state of affair presents for construction workers cheated out of their DBA wages. They can file a complaint during the course of their employment and risk retaliation. Or, they can wait until their employment ends, and discover that, because the project has been completed, WHD will not even investigate their complaint.

The Wage Theft Prevention Amendment Act of 2013 and subsequent amendments address this quandary. They do so by permitting construction workers to sue for wages owed under the DBA at any time within a three-year statute of limitations. D.C. Code §§ 32-1301(3)(E)(iii), 32-1308(c)(1). The effect of nullifying that part of the DCWPCL permitting such suits would be dramatic, for both employers and employees. Employees cheated out of their wages would be required either to risk retaliation from their employer or wait and pursue an administrative remedy that is likely unavailable.

But, the effect would go well beyond those employees. As Seth Harris recognized in his congressional testimony, "responsible employers can be significantly disadvantaged when forced to compete with law-breaking employers that are never held to account or face penalties that do

---

[11]     In that letter Weil cites decisions of the DOL Administrative Review Board holding that "[t]he decision whether to enforce the DBA in a particular case is committed to the Administrator's discretion." *Veteran's Canteen Serv.,* ARB Case No. 96-115 (Oct. 25, 1996).

not punish or have deterrent effects." Harris Testimony, *supra*, at 16. Competition for government contracts in the District of Columbia would be skewed in favor of those willing to break the law and against those willing to abide by it. Contractors who abide by the law would suffer, as would their employees. Both would lose work and income as a result of unfair competition from employers willing to cheat their own employees and violate applicable law.

<u>CONCLUSION</u>

For the reasons stated, Defendant's motion to dismiss must be denied.

Dated: August 26, 2020

/s/Lucas R. Aubrey
Lucas R. Aubrey
Esmeralda Aguilar
Sherman Dunn, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
Telephone No. (202) 785-9300
Fax No. (202) 775-1950
E-Mail: Aubrey@shermandunn.com
E-Mail: Aguilar@shermandunn.com

*Counsel for FFC*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of August, 2020 a true and correct copy of the foregoing proposed brief of the Foundation for Fair Contracting Mid-Atlantic Region as *amicus curiae* was served by operation of the Court's electronic filing system to all parties listed on the electronic filing receipt.

<u>   /s/Lucas R. Aubrey  </u>

<u>RULE 29(a)(4)(E) STATEMENT</u>

Pursuant to FRAP 29(a)(4)(E), incorporated by reference in Local Civil Rule 7(o), *amicus curiae* affirms that no counsel for a party authored this brief in whole or in part, nor did any person or entity, other than amicus, make a monetary contribution to the preparation or submission of this brief.

<u>   /s/Lucas R. Aubrey  </u>