# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JARRELL RIMAIHI et al., | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) Case No. 1:20-cv-00930 |
| | ) |
| AVITECTURE, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF SEAN McGARVEY

SEAN McGARVEY hereby declares as follows:

1. I am the current president of the North American Building Trades Unions ("NABTU"). NABTU is a labor organization comprised of fourteen national and international unions that collectively represent approximately three million employees in the building and construction industry in the United States and Canada. I have served as the president of NABTU continuously since 2012.

2. The attachment to this declaration is a an accurate and correct copy of a letter, dated July 28, 2016, that I received at about that time from Dr. David Weil, who was then the Administrator of the U.S. Department of Labor Wage and Hour Division.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 5, 2020

_____
Sean McGarvey

**U.S. Department of Labor**  Wage and Hour Division
Washington, D.C. 20210



JUL 2 8 2016

Sean McGarvey
President
North America's Building Trades Unions
Suite 600
815 Sixteenth Street, NW
Washington, DC 20006

Dear President McGarvey:

This is in response to your November 10, 2015 letter regarding Wage and Hour Division ("WHD") enforcement of the Davis-Bacon Act and Davis-Bacon Related Acts (collectively, "DBRA").

Your letter raises three main concerns. First, you expressed concern over a perceived decline in agency resources devoted to DBRA enforcement, citing data in a table that would appear to suggest decreased enforcement of DBRA. The remaining two concerns stem from WHD's exercise of its discretion 1) to choose not to pursue an investigation where a contract for construction has closed, or work is nearing completion, and 2) to refer certain investigations of employer contributions to benefit plans to the Employee Benefits Security Administration ("EBSA"), the primary agency within the Department charged with safeguarding, among other things, contributions to benefit plans under the Employee Retirement Income Security Act of 1974 ("ERISA").

As to the first issue raised, the investigations cited in your letter do not accurately reflect WHD's enforcement of the DBRA. As you can see in the table below comparing NABTU's account with our enforcement database, not only has there not been a decline in DBRA enforcement and debarment actions, but our records demonstrate that the number of investigations and debarments stayed steady over recent years. In the future, we would be happy to assist the NABTU in using the enforcement database to extract the correct information in order to avoid any future misunderstanding and to otherwise answer any questions you may have.

| | NABTU Data | | WHD Data | | | |
|---|---|---|---|---|---|---|
| Year | DBRA Cases | DBRA Back Wages | DBRA Investigations | DBRA Back Wages | Number of Employees | Contractors Debarred |
| 2004 | 307 | $6,500,000 | 583 | $7,947,818 | 4,659 | 6 |
| 2005 | 340 | $8,000,000 | 537 | $7,376,938 | 4,122 | 22 |
| 2006 | 261 | $12,300,000 | 492 | $9,050,603 | 3,934 | 21 |
| 2007 | 219 | $4,700,000 | 489 | $7,434,725 | 5,013 | 12 |
| 2008 | 271 | $9,800,000 | 390 | $9,933,516 | 5,808 | 6 |
| 2009 | 412 | $14,100,000 | 334 | $5,625,258 | 2,529 | 13 |
| 2010 | 942 | $25,500,000 | 574 | $7,442,763 | 4,205 | 9 |
| 2011 | 1,227 | $33,000,000 | 1,744 | $20,720,831 | 10,852 | 27 |
| 2012 | 1,150 | $25,400,000 | 2,035 | $31,298,653 | 12,096 | 19 |
| 2013 | 758 | $16,700,000 | 1,785 | $27,952,139 | 11,103 | 22 |
| 2014 | 429 | $8,800,000 | 1,495 | $27,810,032 | 11,693 | 35 |

With regard to your concerns regarding WHD's handling of complaints late in the contract period, WHD takes its responsibility to enforce the DBRA very seriously, particularly because employees have no private right of action under the DBRA. However, as is the case with any law enforcement agency, WHD must carefully and diligently exercise enforcement discretion in determining how best to use our limited resources. WHD simply does not have the resources to conduct an investigation into every complaint alleging DBRA violations. Despite these limitations, WHD does not have a policy that requires that a contract have a particular number of months remaining in order to begin an investigation. On a daily basis, District Office managers must make difficult choices whether to pursue complaints based on the resources available (i.e., time and personnel) to responsibly enforce all of the labor standards statutes for which the office is responsible, not just the DBRA[1]. This applies to allegations made by third parties as well. WHD can, and does, act on allegations of DBRA violations brought to its attention by these parties. However, such allegations must be independently investigated and verified by WHD before enforcement action can be pursued. (Similarly, investigations will not be not reportable under Executive Order 13673 until an administrative merits determination has been made.)

There are several important circumstances under which WHD may initiate a DBRA investigation of a completed (paid off) construction prime contract. For example, in some circumstances, an investigation of a closed contract may be appropriate to support a debarment action. Similarly, where cross-withholding is an option, consideration is given to initiating an investigation if the relevant prime contractor has other current federal or federally assisted contracts (whether or not work has already begun) from which funds can be withheld. Finally, if the prime contract has not been paid off, an investigation of a complaint concerning a completed subcontract may be scheduled. When none of these circumstances exist, however, the resource constraints noted above counsel against commencing an investigation because when a prime contract has been completed the recovery of back wages generally cannot be achieved through withholding funds otherwise due the prime contractor on the contract on which the violation occurred. WHD enforcement discretion has been recognized and upheld by the Administrative Review Board ("ARB") and its predecessor, the Wage Appeals Board ("WAB"). *See Veteran's Canteen Service*, ARB Case No. 96-115 (Oct. 25, 1996) ("The decision whether to enforce the DBA in a particular case is committed to the Administrator's discretion.") (citing *W.J. Menefee Const. Co.*, WAB Case No. 90-15 (Oct. 25, 1993)); *see also Ames Const., Inc.*, WAB Case No. 91-02 (Feb. 23, 1993).[2]

Lastly, WHD does not have a policy of referring complaints about the failure of employers to make benefit plan contributions to EBSA. As you know, fringe benefits are part of the Davis-Bacon prevailing wage and can be paid in cash or by employer contributions to bona fide benefit plans. DBRA violations that involve the failure to make fringe benefit contributions are pursued in the same way that wage underpayments are. However, DBRA violations involving fringe

---

[1] The WHD is not only charged with responsibility to investigate potential violations of prevailing wage laws, but also potential violations of the Fair Labor Standards Act, the Family and Medical Leave Act, temporary nonimmigrant worker statutes, and the Migrant Seasonal Worker Protection Act, among others. WHD's responsibilities have increased over the past eight years with the addition of several Executive Orders for which the Department of Labor has sole enforcement authority.

[2] ARB and WAB decisions are available at: www.dol.gov/appeals.

benefit plans and benefit contributions will be referred to EBSA in appropriate cases. EBSA may sometimes be in a better position to protect the interests of employees in pension and health insurance plans. Through its Health Benefits Security Project and Rapid ERISA Action Team, EBSA can seek remedies that WHD cannot. These include paying amounts to restore losses, disgorging profits, and ensuring claims are properly processed and paid and that penalty amounts are paid (when applicable). EBSA intervention can be especially helpful in bankruptcy situations. Plan assets recovered by EBSA go directly back to the plans and participants involved.

With respect to debarment, it is important to recognize that recommendations for debarment under the DBRA are not considered by the Office of the Solicitor until after WHD has completed its investigation of a contractor's or subcontractor's prevailing wage compliance. Among the factors that are considered are whether there have been recurring violations of the same nature, whether there has been falsification of records, the amount of back wages, the continuing nature of violations, the extent and seriousness of violations, and the employer's attitude toward future compliance.

We agree that debarment is an effective tool for promoting DBRA compliance, and WHD pursues it in appropriate cases. At the same time, because debarment is a severe penalty and contractors often vigorously defend against debarment claims, alleged violations potentially warranting debarment must be thoroughly investigated and well-documented.

WHD must also respect the due process rights of contractors and subcontractors before they can be placed on the ineligible list. If an investigation finds violations, before any enforcement action is initiated, including cross-withholding, contractors and/or subcontractors are advised of the violations at a final conference. As you point out, many contractors may decide to pay any back wages documented at this stage. However, if they do not, and violations are not resolved at the final conference, the violations are detailed in writing following the conference and disputes concerning their existence and nature, and appropriate remedies, are resolved pursuant to the administrative procedures in 29 CFR §§ 5.11 and 5.12, as well as 29 CFR Part 6.

I hope you find this information helpful in addressing your concerns.

Sincerely,

Dr. David Weil
Administrator