UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JARRELL RIMAIHI, *et al.*, individually and on behalf of all persons similarly situated,<br>　　Plaintiffs,<br>　　v.<br>AVITECTURE, INC.,<br>　　Defendant. | Civil Action No. 20-0930 (CKK) |

**MEMORANDUM OPINION AND ORDER**
(November 15, 2022)

This labor dispute is before the Court on Defendant[1] Avitecture, Inc.'s ("Defendant" or "Avitecture") motion to dismiss. Plaintiffs, a putative class of electricians and contractors, argue that Defendant, their employer, paid Plaintiffs less than they were due under their contract and District of Columbia statute. Defendant essentially argues that Plaintiffs' state-law claims are preempted by federal statute or, alternatively, that the United States Department of Labor has primary jurisdiction over this matter. Consistent with the vast majority of other courts to confront the same arguments here, the Court concludes that Plaintiffs state a claim under state law and that no federal law otherwise preempts Plaintiffs' state-law claims. As such, and upon consideration of the pleadings,[2] the relevant legal authorities, and the record for purposes of this

---

[1] Plaintiffs have dismissed all claims against Rightech, Inc. ECF No. 27 at 1. As such, Avitecture is the only remaining defendant.

[2] The Court's consideration has focused on the following documents:
- Plaintiffs' Complaint, ECF No. 1 ("Compl.");
- Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss Class and Collective Action Complaint, ECF No. 17-1 ("Mot." or "Motion");
- Plaintiffs' Memorandum of Law in Opposition to Avitecture, Inc.'s Motion to Dismiss Plaintiffs' Class and Collective Action Complaint, ECF No. 23 ("Opp.");
- Defendant's Reply Memorandum to Plaintiffs' Opposition to Motion to Dismiss, ECF No. 26 ("Repl."); and
- Amicus' Proposed Brief of the Foundation for Fair Contracting Mid-Atlantic Region as *Amicus Curiae*, ECF No. 25.

1

motion, the Court **DENIES** Avitecture's [17] Motion to Dismiss Class and Collective Action Complaint.

I. BACKGROUND

For the purposes of the motion before the Court, the Court accepts as true the well-pleaded allegations in Plaintiffs' complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

Since 2020, Plaintiffs, along with their putative class, were employed as technicians by Defendant Rightech, Inc. ("Rightech"), a staffing agency, to perform certain electrical and contracting work at the headquarters of the Transportation Security Agency in Springfield, Virginia ("TSA Job"). Compl. ¶ 27. Additionally, in 2018, Rightech hired Plaintiff Rimaihi as a "technician" to install speakers, wiring, and electrical equipment at the Federal Reserve Board building at 20001 Constitution Avenue, NW, Washington, DC 20551 ("Federal Reserve Job"). *Id.* ¶ 29.

Avitecture "is an electrical audio/visual contracting company which performs electrical construction and installation work for governmental entities and private parties." *Id.* ¶ 9. It contracted with Rightech to perform the disputed work for the TSA and Federal Reserve Jobs. *Id.* ¶¶ 11-14. According to Plaintiffs' complaint, Avitecture regularly wins similar federal contracts and regularly employs Rightech to staff and ultimately effect the work the federal and District of Columbia governments pay Avitecture to perform. *See id.* ¶¶ 31, 51. Plaintiffs, on behalf of themselves and their putative class, allege (partly legally and partly factually) that all

---

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

contracts for such work make explicit or implicit reference to the Davis-Bacon Act, 40 U.S.C. § 3142 ("DBA").

That law governs all public contracts with the federal or District of Columbia governments relating to construction on public buildings or public works. Among other things, the DBA empowers the Secretary of Labor to classify laborers and set minimum wages for those laborers that "shall be based on the wages the Secretary [] determines to be prevailing" for each class of laborer in a given market. *Id.* (a)-(b). Based upon those rates, the eventual labor contract must then contain three stipulations:

> (1) That the contractor will pay covered workers at least the prevailing rates as recited in the advertised specifications, any contrary agreement between the contractor and his workers notwithstanding
>
> (2) That the contractor will publish post the wage scale at work; and . . .
>
> (3) That there may be withheld from the contractor so much of accrued payments as the contracting officer considers necessary to pay laborers and mechanics employed by the contractor or any subcontractor on the work the difference between the wages required by the contract to be paid laborers and mechanics on the work and the rates of wages received by the laborers and mechanics and not refunded to the contractor or subcontractors or their agents.

*Garcia v. Skanska USA Bldg., Inc.*, 324 F. Supp. 3d 76, 78 (D.D.C. 2018) (capitalization altered) (quoting 40 U.S.C. § 3142(c)) (DLF). Through this third mandatory stipulation, the DBA creates a remedy for workers paid less than the wages guaranteed by the DBA.

The DBA, however, has no private cause of action. *Id.* at 79. Rather, "[d]isputes over the proper classification of workers under a contract containing Davis-Bacon provisions must be referred to the Secretary [of Labor] for determination." *Univs. Rsch. Ass'n v. Coutu*, 450 U.S. 754, 761 (1981). In other words, disputes over the DBA's applicability to a particular contract and the wages due under the DBA (as applied to that contract) must first be presented to the

Department of Labor. *See, e.g.*, *Ibrahim v. Mid-Atl. Air of DC, LLC*, 802 F. Supp. 3d 73, 76 (D.D.C. 2011).

Importantly, Plaintiffs do not bring a Davis-Bacon Act claim. Rather, Plaintiffs advance two claims under District of Columbia state law. First, Plaintiffs mount a breach-of-contract claim arising under District of Columbia law. Compl. at 20. As to this first claim, it appears that Plaintiffs' theory is either that the contracts' wage provisions were amended by operation of state law and/or that the plain meaning of the wage provisions are informed by the DBA as background context. *See id.* ¶¶ 77-82. Second, Plaintiffs claim that Avitecture violated District of Columbia law by failing to pay higher wages, specifically, the D.C. Wage Payment and Collection Law ("Wage Law" or "DCWPCL"), D.C. Code § 32-1301 *et seq.* (West 2022).

Pursuant to the Wage Law, employers must pay their employees "all wages earned." *Id.* § 32-1302. "Wages" are "all monetary compensation after lawful deductions, owed by an employer, whether the amount owed is determined on a time, task, piece, commission, or other basis of calculation." *Id.* § 32-1301(3). "Wages" further include" all "remuneration promise or owed . . . [p]ursuant to District *or federal* law," as well as pursuant to "a contract for employment, whether written or oral" or "a contract between an employer and another person or entity." *Id.* (3)(E) (emphasis added). "[R]emuneration promised by an employer to an employee shall be presumed to be at least the amount required by federal law, *including federal law requiring the payment of prevailing wages*, or by District law." *Id.* § 32-1305 (emphasis added). The Wage Law authorizes a private right of action. *Id.* § 32-1308; *Garcia*, 324 F. Supp. 3d at 80. Avitecture moves to dismiss only the Wage Law claim.

In moving to dismiss for failure to state a claim, Defendant argues only that the DBA somehow prevents employees from maintaining an action for unpaid wages promised under state

4

law if those employees would otherwise be subject to the DBA.  With Defendant's motion fully briefed,[3] the Court turns to that question's resolution.

## II.  LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III.  DISCUSSION

Without precisely using the word, Avitecture argues mainly that the DBA preempts Plaintiffs' state law claims.  Defendant's position is not without support.  In *Grochowski v. Phoenix Const.*, 318 F.3d 80 (2d Cir. 2003), the United States Court of Appeals for the Second Circuit held that the DBA's bar on a private cause of action effectively preempts any state "common law contract claim" predicated on a labor contract governed by the DBA. *Id.* at 86. The *Grochowski* court offered scant explanation for why the lack of a cause of an action in a *federal* statute *ipso facto* bars recovery under state law where a private cause of action is

---

[3]  The Court granted amicus Foundation for Fair Contracting Mid-Atlantic region to file a brief in support of Plaintiffs.  The Court also relies on this amicus brief in resolving the pending Motion.

available.  *See Cox v. NAP Const. Co., Inc.*, 891 N.E.2d 271, 276 (N.Y. 2008).  Facing such limited justification for its holding, every other federal Court of Appeals to examine such a question has concluded that *Grochowski* is, in fact, itself "really just an 'end-run' around well-established preemption doctrine."  *E.g.*, *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 584 (7th Cir. 2012);[4] *cf. also Cox*, 691 N.E2d at 276 (in rejecting *Grochowski*, "the default assumption, absent a showing to the contrary, is that Congress intended neither to create a new federal right of action *nor to preempt existing state ones* (emphasis added)).  Most recently, Judge Dabney L. Friedrich of this jurisdiction joined the great weight of authority rejecting *Grochowski* to hold that the DBA does not preempt a Wage Act claim predicated on DBA worker-classification.  *Garcia*, 324 F. Supp. 3d at 84-85.  Without any binding appellate authority on the question, and after careful consideration of the parties briefing, the Court shall join Judge Friedrich in applying the well-reasoned, majority approach.

Because Avitecture moves to dismiss a Wage Act claim, the Court begins with the text of the statute.  As noted above, the Wage Act empowers employees to recover unpaid wages due either under (1) District of Columbia law or (2) federal law, including federal law requiring the payment of prevailing wages.  *See* D.C. Code § 32-1305 (West 2022).  Defendant does not appear to contest that the DBA is a federal law requiring the payment of prevailing wages, and a

---

[4] *Cf. also, e.g.*, *Bukowski v. Wells Fargo Bank, N.A.*, 757 F. App'x 124, 129-30 (3d Cir. 2018) ("[t]he absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of federal law"); *Amaya v. Power Design, Inc.*, 833 F.3d 440, 445 (4th Cir. 2016) (same); *Mik v. Fed. Home Loan Mortg. Corp.*, 743 F.3d 149, 166 (6th Cir. 2014) (same); *Frank Bros., Inc. v. Wis. Dep't of Transp.*, 409 F.3d 880, 885 (7th Cir. 2005) ("There is nothing in the statutory text [of the DBA] which would lead us to conclude that it was the intention of Congress to expressly override either complementary or inconsistent state laws."); *Trone Health Servs., Inc. v. Express Scripts Holding Co.*, 974 F.3d 845, 851 & n.4 (8th Cir. 2020) (similar).  The United States Court of Appeals for the District of Columbia Circuit has yet to speak to this question.

plain reading of the DBA would seem to qualify it as a "federal law requiring the payment of prevailing wages." *See* 40 U.S.C. § 3142(b) (covered employees' compensation "*shall* be based on the wages the Secretary [] determines to be prevailing" (emphasis added)).  Rather, Defendant relies on two 2011 cases[5] analyzing the Wage Act and the DBA's purported preemptive effect. Mot. at 7.  These cases lack persuasive value, however, because they construed an earlier version of the Wage Act that did not include any language incorporating federal law as a basis for recovery.  *Compare* D.C. Code § 32-1305 (West 2022) *with* D.C. Code § 32-1305 (2001 Repl.) ("Except as herein provided, no provision of this chapter shall in any way be contravened or set aside by private agreement.").

Having concluded that the Wage Act as it presently stands affords a private cause of action for wages due under federal law, the Court must turn to the question of whether the DBA nevertheless preempts such an application of the Wage Act.  As the *Garcia* court explained, "[t]here is a difference between the lack of a private right of action [in the DBA] and a congressional intent to foreclose other, extant rights of action."  324 F. Supp. 3d at 81.  As to preemption, the Court must begin with the presumption that "the historic police powers of the States," including the regulation of employment relations, are "not to be superseded by [federal law] unless that was the clear and manifest purpose of Congress."  *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009).  Avitecture has pointed to no statutory text, or even any legislative history, suggesting that Congress intended the DBA to supplant state law in any way.  In fact, the text of the DBA itself suggests that Congress did not intend to preempt, at the very least, any other federal law.  *See* 40 U.S.C. § 3142(c) ("In determining the overtime pay to which a laborer or

---

[5] *Johnson v. Prospect Waterproofing Co.*, 813 F. Supp. 2d 4 (D.D.C. 2011) and *Ibrahim v. Mid-Atl. Air of DC, LLC*, 802 F. Supp. 2d 73 (D.D.C. 2011).

7

mechanic is entitled under *any* federal law, the regular or basic hourly rate of pay . . . is deemed to be the rate computed under section 3141(2)(A) of this title." (emphasis added)).

It would seem odd indeed for Congress to provide for employees of federal contractors to have fewer avenues of recovery as against the private contractors themselves simply because those contractors performed work for the federal or District of Columbia governments. "To find otherwise would require adopting the novel presumption that where Congress provides [little] remedy under federal law, state law may not afford one in its stead." *See Wigod*, 673 F.3d at 581.

Avitecture also relies on the D.C. Circuit's decision in *Danielsen v. Burnside-Aviation Training Ctr., Inc.*, 941 F.2d 1220 (1991). As *Garcia* concluded, "*Danielsen* does not resolve this case." 324 F. Supp. 3d at 84. In *Danielsen*, the D.C. Circuit concluded that employees could not bring a Racketeer Influenced and Corrupt Organizations Act claim against their employer for failing corruptly to pay prevailing rates under the Service Contract Act, which lacks a private cause of action, because "the ingenious pleading of [an] action in RICO terms rather than in straight SCA language cuts against the implication of the right of action rather than in its favor." 941 F.2d at 1228. In so holding, however, the D.C. Circuit confronted a vexing problem not present here: parallel proceedings were pending before the Department of Labor. *Id.* at 1226. Here, Plaintiffs have not attempted two bites at the same apple. They have chosen to proceed under state law in federal district court on diversity jurisdiction, and they have *not* chosen to proceed before the Department of Labor on a DBA claim. Because the DBA does not preempt the application of state law for injury arising thereunder, there is no *Danielsen* problem here.

Avitecture advances one last argument in an effort to distinguish this case from *Garcia*. In *Garcia*, the parties did not dispute the classification of each plaintiff within the Department of Labor's classification and wage-setting determinations. 324 F. Supp. 3d at 84. Briefly in reply, Avitecture states that it *does* dispute "whether Plaintiffs are 'owed' DBA prevailing wages (and at what classification)." Repl. at 19.[6] What classification applies, however, is at most a mixed question of fact and law which, Avitecture concedes, is inapplicable at the motion-to-dismiss stage. *Id.* In disposing of such a question, it may be the case that the Department of Labor has "primary jurisdiction" to determine the proper classification in the first instance, *see* Repl. at 10 n.4, but whether, for example, a stay is warranted to permit the Department of Labor to do so is a question for another time. *See Reiter v. Cooper*, 507 U.S. 258, 268 (1993).

## IV.  CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED**, that Avitecture's [17] Motion to Dismiss Class and Collective Action Complaint is **DENIED**.

**SO ORDERED**.

Dated: November 15, 2022

                                                     /s/
                                          COLLEEN KOLLAR-KOTELLY
                                          United States District Judge

---

[6] Avitecture also insists that Plaintiffs must produce the contracts themselves to avoid dismissal. Avitecture cites no authority for that proposition beyond the general principle that a plaintiff must allege such facts as necessary to give Defendants notice of the conduct at issue, and the Court is unaware of any authority requiring dismissal of a breach-of-contract claim where the contract itself was not appended to the complaint.